UNITED STATES of America ex rel.
James M. SANDERS, Petitioner,

v.

Charles ROWE, Director, Department of
Corrections, State of Illinois, and Dennis
Wolfe, Warden, Joliet Correctional Cen-
ter, Respondents.

No. 78 C 1914.

United States District Court,
N. D. Illinois, E. D.

Nov. 20, 1978.

Ralph Ruebner, Deputy State App. Defender, Daniel A. Cummings, Asst. State App. Defender, Chicago, Ill., for petitioner.

William J. Scott, Atty. Gen., State of Illinois by Michael I. Santow, Asst. Atty. Gen., Chicago, for respondents.

## OPINION

BUA, District Judge.

### I.

James M. Sanders filed this petition for a writ of habeas corpus to challenge his March 21, 1977, conviction of two armed

robbery charges in the Circuit Court of Winnebago County, Illinois. Petitioner claims that two confessions[1] which were admitted against him at his trial were obtained in violation of his right to counsel at interrogation sessions, and should have been suppressed pursuant to the fifth, sixth, and fourteenth amendments to the United States Constitution. This issue was timely raised in the trial court and on appeal to the Illinois Appellate Court and the Illinois Supreme Court. Petitioner's conviction at a stipulated bench trial was affirmed on appeal. *People v. Sanders*, 55 Ill.App.3d 178, 13 Ill.Dec. 186, 370 N.E.2d 1213 (2d Dist. 1977), *petition for leave to appeal denied*, No. 50387 (March 30, 1978) (unpublished order). The parties agree that petitioner has exhausted all state remedies.

 The case is now before the court on respondents' motion to dismiss, and on petitioner's cross motion for summary judgment. The court's findings of fact and conclusions of law are based on the record of the state proceedings and the findings made by the circuit court judge. Though the state court's record and findings are ambiguous on many points, this court relies on them here, in holding that the petitioner is entitled to summary judgment on the basis of the undisputed facts.[2] *See Williams v. Brewer*, 509 F.2d 227 (8th Cir. 1975) (a district court may properly rely on undisputed state court findings of fact in conducting its independent review of a habeas petitioner's constitutional claims), *aff'd*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 423 (1977). To the extent that there is any genuine issue of material fact herein, it has

been resolved in favor of the state. Accordingly, an evidentiary hearing has not been necessary.[3] *See* Rule 8(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254; *Blackledge v. Allison*, 431 U.S. 63, 81–82, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

## II.

At 1:00 a. m. on January 13, 1977, Officer Charles Bishop of the Rockford Police Department observed three men struggling near the corner of State and Madison Streets in Rockford.[4] Two of the men fled as Bishop approached, and he chased them. Bishop recognized one of the men as the petitioner. While chasing the men, Bishop passed a parked patrol car containing Rockford Officers Frew and Lindstrom, and he asked them to chase the green Buick in which the pair had fled. Bishop then returned to the third man, Frank Barbero, who was lying on the ground. Barbero told Bishop that the two suspects had attempted to rob him and were armed.

After a chase, Frew and Lindstrom stopped the Buick. In the car were three men: the petitioner, Mark Manley, and Boyce Smelser. The officers searched the car and found a .32 caliber revolver, apparently stained with dried blood, and a "club-type" instrument.[5] The suspects were then advised of their rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and taken to the police station. There was conflicting testimony at the preliminary hearing as to whether petitioner was drunk at the time of his arrest. (R. 64–66, 72, 238–39).

---

1. A third confession to an additional crime was also admitted at trial. It was ruled inadmissible by the Illinois Appellate Court. *See* p. 1133, *infra*.

2. In deciding this case, the court finds it necessary to resolve several undecided questions of constitutional law. The existence of an important, difficult, or complicated question of law, where there is no genuine issue of material fact, is not a bar to a summary judgment. 6 Pt. 2 Moore's Federal Practice ⸳ 56.16, at 56–661 & n.1 (2d ed. 1976).

3. Should the court have reached a different resolution of the petitioner's legal claims, an evidentiary hearing might have uncovered facts sufficient to support the testimony given by petitioner in the state court, thereby providing additional grounds for habeas relief.

4. These facts are drawn from the testimony given at the preliminary hearing held on March 16, 1977, and from the decision of the appellate court, 55 Ill.App.3d at 179–80, 13 Ill.Dec. at 187–88, 370 N.E.2d at 1214–15.

5. These were not introduced into evidence at trial.

At the station, petitioner was again advised of his *Miranda* rights. He signed a waiver of rights form, then gave a statement denying any participation in the offense. At about 3:00 a. m. he was taken to jail.

Six hours later, at 9:00 a. m., petitioner was interrogated by Rockford Police Detectives Bland and Fegan.[6] At 9:24, they again read the petitioner his rights and asked if he understood them. He said that he did and, according to the detectives' testimony, said that he wished to speak to an attorney.[7] The detectives did not, however, cease their interrogation. They took no steps towards providing petitioner with a lawyer.

After petitioner requested a lawyer, the detectives told him that they had a strong case against him and that he would almost certainly be convicted and sentenced to a minimum of four years in prison. They described the substance of their case to him, including the fact that they had obtained an oral statement from Smelser and a written statement from Manley. When the petitioner asked to see Manley's statement, the detectives refused to show it to him. They did fold the paper so he could see Manley's signature. A few minutes later, petitioner agreed to give a statement and signed a written waiver form.[8] This statement admitted an involvement in the armed robbery of Barbero.

At some point prior to 5:00 p. m. that day, a criminal complaint charging petitioner with armed robbery in the Barbero case was sworn by Detective Bishop and filed in the Winnebago County Circuit Court Clerk's Office.[9]

During the afternoon, petitioner, still in custody, was moved to the Sheriff's office at the Winnebago County Courthouse. At 5:40, Sergeant England and Officers Ferger and Shimaitis of the Winnebago County Sheriff's Department began interrogating the petitioner about a second armed robbery. Petitioner was advised of his *Miranda* rights and again signed a written waiver form.[10] At about 6:00 p. m., petitioner confessed to the armed robbery of Smith T. Randol on the night of January 12, the same night as the Barbero robbery.[11]

That evening, Officers Rollins and McGill of the Boone County Sheriff's Department interviewed petitioner at the Winnebago County Sheriff's Office. At about 9:00 p. m., petitioner signed another written waiver of rights form. He then confessed to the armed robbery and aggravated battery of James Collins, also on the evening of the twelfth.[12]

---

**6.** The petitioner testified that he was hungover and had a headache during the 9:00 interrogation session. He said that throughout the day of the interrogations, he was feeling ill from a bronchitis attack for which he had not sought medical treatment. (R. 243). Detective Bland testified that petitioner requested aspirin for a headache. (R. 120–21).

**7.** It is unclear whether petitioner requested a specific attorney by name and phone number. Petitioner testified that he did, (R. 241), Bland testified that he didn't, (R. 120), and Fegan testified that he could not recall whether he did or did not. (R. 133).

**8.** Petitioner testified that he was told by the detectives that he would receive the maximum penalty if he did not cooperate, but that they would see he received a "very, very light sentence" if he did. (R. 242–43). He also testified that the detectives told him that he could not see his attorney until he gave them a statement, and that they refused to allow him to call his attorney during their interrogation. (R. 241–42).

**9.** (Stip., filed Oct. 23, 1978). Complaints for the Randol and Collins robberies were sworn on Oct. 13 and 14, and filed on Oct. 14 and 21, respectively.

**10.** The evidence is ambiguous as to whether any of the officers knew of petitioner's prior statement to the Rockford police. The officers testified that they were unaware that petitioner had made any requests for counsel.

**11.** Manley had confessed to this robbery at 2:38 p. m. that afternoon.

**12.** Officer Rollins testified that he was aware that petitioner had made a previous statement to the Winnebago county police. All officers involved in the second and third confessions testified that petitioner did not request counsel in their presence.

The petitioner testified that at the later two interrogations he told the officers that he wished to speak to an attorney and that his requests were denied. He also testified that

A preliminary hearing was held in the case on January 20, 1977, and a hearing on the motion to suppress was held on March 16, 1977. At the suppression hearing, the trial court ruled against the defendant's motion to suppress. The judge issued no written findings. His ruling from the bench, in part, was that:

I believe they are adult young men who signed these waivers understandingly, knowingly. I believe the statements were signed voluntary. [sic] I think there are cases that indicate even psychological coercion is wrong, but I don't believe there was sufficient psychological coercion on these two young men to make these statements involuntary.

Therefore, the statements will be admitted. . . .

(R. 282).[13]

On March 21, 1977, the petitioner's case was called for trial. The lawyers announced a plea agreement, under which petitioner would plead guilty to two armed robbery charges, for the Randol and Collins robberies, while the charge of attempted armed robbery of Barbero and the aggravated battery charges would be dismissed. The state agreed to recommend a penalty of four to twelve years imprisonment, to run concurrently on both charges. After the prosecutor summarized the state's version of the events leading up to petitioner's arrest, the judge proceeded to inform the defendant of his rights pursuant to Illinois Supreme Court Rule 402, Ill.Rev.Stat. ch. 110A, § 402 (1975).

At the conclusion of the admonitions, the petitioner asked whether his entry of a guilty plea would terminate his right to appeal from the trial court's denial of his suppression motion. When told that it would, the defendant seemed surprised, so the court ordered a recess. After the recess, the judge asked the lawyers if they had found a way to preserve petitioner's

right to appeal. They said that they had, by agreeing to a stipulated bench trial. The petitioner stipulated to the evidence presented at the preliminary hearing and the motion to suppress. He also stipulated that the statement of facts made by the prosecutor would be the proof the prosecutor would offer in the case. (R. 18, 29–30). See note 57, infra. After further admonitions and discussion, the judge found the petitioner guilty of the Collins and Randol armed robberies, and entered judgment as agreed to in the plea agreement.

Petitioner appealed to the Illinois Appellate Court. On December 7, 1977, the appellate court affirmed the conviction. People v. Sanders, 55 Ill.App.3d 178, 13 Ill.Dec. 186, 370 N.E.2d 1213 (2d Dist. 1977). In its opinion, the court ruled that the Barbero confession was inadmissible under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), since the Rockford police officers had failed to honor petitioner's original request for an attorney. It ruled that the admission of the confession was harmless error, however, since the second and third confessions were found to be admissible. These later confessions, the court held, were not tainted by the earlier Miranda violation, since the passage of time, repeated admonitions, and other factors were sufficient to dissipate any taint. 55 Ill. App.3d at 183–84, 13 Ill.Dec. at 190, 370 N.E.2d at 1217. In addition, the court concluded that the use of a stipulated bench trial, while not good practice, was acceptable in this case. 55 Ill.App.3d at 184, 13 Ill.Dec. at 191, 370 N.E.2d at 1218. The Illinois Supreme Court denied the petitioner's request for leave to appeal. No. 50387 (March 30, 1978) (unpublished order).

### III.

Petitioner asks this court to find that the Randol and Collins confessions were illegal-

---

the original interrogators had told him that he would be asked by other officers to "clear the books" and "not to worry about it." (R. 246, 248, 251). He added that the second investigators told him no further charges would be pressed, and that he thought the second and

third confessions would not be used against him. (R. 247, 259–60).

**13.** The judge stated that he found the officers' testimony to be generally more credible. (R. 280–282).

ly obtained, and that these confessions, as well as the Barbero confession, should have been suppressed at trial. Petitioner claims that he had a right to have counsel present at the second and third interrogations, pursuant to his unanswered request at the first interrogation.

This asserted right flows from two separate constitutional provisions.[14] First, petitioner claims a right to counsel at the interrogations under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in order to protect the exercise of his fifth amendment rights. He argues that the Seventh Circuit's decision in *United States ex rel. Williams v. Twomey*, 467 F.2d 1248 (7th Cir. 1972), mandates the suppression of any statement made to police after the denial of the *Miranda* right to counsel, at least until such time as counsel was actually provided. The petitioner also claims a sixth amendment right to counsel, under *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) and *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

The second and third confessions might be suppressed as independently violative of either the fifth or the sixth amendment. They may also be suppressed as tainted fruit of earlier fifth or sixth amendment violations, unless the connection to the earlier confessions was sufficiently attenuated to dissipate the taint. *See Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The state opposes the petitioner's claims. It also argues that petitioner waived any right to counsel that he possessed, *see Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), when he signed *Miranda* waiver forms before giving the confessions.

The fifth and sixth amendment claims are analytically different, and will be considered separately. *See Brewer v. Williams*, 430 U.S. at 397–98, 97 S.Ct. 1232; *United States v. Brown*, 569 F.2d 236, 240 (5th Cir. 1978) (en banc) (Simpson, J., dissenting). Similarly, the waiver and taint doctrines, while related, will also be separated for purposes of discussion. *See United ed States v. Massey*, 437 F.Supp. 843 (M.D. Fla.1977). *See also Canal Zone v. Gomez*, 566 F.2d 1289, 1291–92 (5th Cir. 1978).

### IV.

#### A. *Initial Fifth Amendment Violation*

■ It is clear that the Illinois Appellate Court was correct in ruling that the Barbero confession was obtained in violation of the petitioner's rights under the fifth amendment. 55 Ill.App.3d at 182–83, 13 Ill.Dec. at 191–92, 370 N.E.2d at 1216. Those rights are defined and protected by the prophylactic rules established in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

> Once warnings have been · given, the subsequent procedure is clear. . . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must also have an opportunity to confer with the attorney and to have him present during any subsequent questionings. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

384 U.S. at 474, 86 S.Ct. at 1627.

Several years ago, in *United States ex rel. Williams v. Twomey*, 467 F.2d 1248 (7th Cir. 1972), the Seventh Circuit established a *per se* rule proscribing the introduction of confessions obtained after the denial of a

---

14. *See United States v. Mandujano*, 425 U.S. 564, 581 n.6, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (plurality opinion); *cf. Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion); *cf. Kirby v. Illinois*, 406 U.S. at 692 n.2, 92 S.Ct. 1877 (Brennan, J., dissenting) (*Miranda* also protects sixth amend- ment rights); *Coleman v. Alabama*, 399 U.S. 1, 16, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (Douglas, J., concurring) (*Miranda* also protects sixth amendment rights). *See generally United States v. Miller*, 432 F.Supp. 382, 385–87 (E.D. N.Y.1977).

*Miranda* right to counsel.[15] Some members of the court of appeals are apparently willing to limit this *per se* rule, *see White v. Finkbeiner*, 570 F.2d 194, 200 n.3 (7th Cir. 1978), but this court considers itself bound by *Williams*. Even if *Williams* has been limited in some aspects, however, post-*Williams* case law requires the suppression of the first confession.

The Seventh Circuit has recently reaffirmed that *Miranda* requires the suppression of any statement obtained from a suspect after a request to see an attorney, absent a finding that the suspect "later voluntarily retracted his request for counsel and effected a knowing and intelligent waiver of his *Miranda* rights." *White v. Finkbeiner*, 570 F.2d 194, 201 (7th Cir. 1978). The standard for determining whether such a waiver occurred is found in *Miranda*.

> If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. . . . This Court has always set high standards of proof for the waiver of constitutional rights, *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and we re-as-

sert these standards as applied to in-custody interrogation.

> . . . [A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained.

> . . . Any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege.

384 U.S. at 475–76, 86 S.Ct. at 1628–1629.[16]

While unsolicited waivers have been upheld by some courts, *see, e.g., United States v. Cavallino*, 498 F.2d 1200 (5th Cir. 1974); *United States v. Tafoya*, 459 F.2d 424 (10th Cir. 1972), solicited waivers must be viewed with skepticism, *Michigan v. Mosley*, 423 U.S. 96, 110 n.2, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (White, J., concurring); *White v. Finkbeiner*, 570 F.2d at 200 n.3, 202. No waiver is possible if the suspect's original request for counsel was not "scrupulously honored." *People v. Grant*, 45 N.Y.2d 358, 362, 408 N.Y.S.2d 429, 434–35, 380 N.E.2d 257 (1978) (construing *Mosley*).

■ Thus, the appellate court correctly ruled that the state failed to meet its heavy burden[17] of demonstrating that petitioner made a knowing and intelligent waiver of

---

**15.** Other circuits have refused to adopt such a rule. *See United States v. Rodriguez-Gastelum*, 569 F.2d 482 (9th Cir.) (en banc), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978); *Nash v. Estelle*, 560 F.2d 652 (5th Cir. 1977), *rehearing en banc granted*, No. 75–3772 (Dec. 15, 1977); *United States v. Grant*, 549 F.2d 942 (4th Cir. 1977); *Cf. Maglio v. Jago*, 580 F.2d 202 (6th Cir. 1978) (reserving question); *see* cases collected at *People v. Grant*, 45 N.Y.2d 358, 363 n.1, 408 N.Y.S.2d 429, 434 n.1, 380 N.E.2d 257 (1978). *See also United States v. Charlton*, 565 F.2d 86, 91 (6th Cir. 1977) (Supreme Court may still impose *per se* rule for *Miranda* right to counsel violations), *cert. denied sub nom. Jacek v. United States*, 434 U.S. 1070, 98 S.Ct. 1253, 55 L.Ed.2d 773 (1978).

**16.** The Court added that "[w]hatever the testimony of authorities as to waiver of rights by an accused, the fact of lengthy interrogation or

incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights. In these circumstances the fact that the individual eventually made a statement is consistent with the conclusion that the compelling influence of the interrogation finally forced him to do so. It is inconsistent with any notion of a voluntary relinquishment of the privilege." 384 U.S. at 476, 86 S.Ct. at 1629.

The Seventh Circuit recently stated that "[t]he fact that . . . [the suspect] was readvised of his *Miranda* rights prior to interrogation would not necessarily dispel the potentially coercive impact of the authorities' refusal to honor his initial request for counsel." *White v. Finkbeiner*, 570 F.2d at 202 n.5.

**17.** *Cf. United States ex rel. Williams v. Twomey*, 467 F.2d 1248, 1252 (7th Cir. 1972) (Pell, J., dissenting) (suggesting burden may be impossible to meet under *Williams*).

the right to counsel.[18] *See, e.g., Canal Zone v. Gomez*, 566 F.2d 1289, 1291 (5th Cir. 1978) (where no ambiguity in request for counsel or long lapse of time between interrogation sessions, a knowing and intelligent waiver is very difficult, if not impossible, to establish); *Williams v. Brewer*, 509 F.2d 227 (8th Cir. 1975), *aff'd on other grounds*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 423 (1977); *United States ex rel. Doss v. Bensinger*, 463 F.2d 576, 578 (7th Cir.), *cert. denied*, 409 U.S. 932, 93 S.Ct. 239, 34 L.Ed.2d 186 (1972); *United States v. Crisp*, 435 F.2d 354 (7th Cir. 1970), *cert. denied*, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971); *People v. Medina*, 71 Ill.2d 254, 16 Ill.Dec. 447, 375 N.E.2d 78 (1978); *People v. Grant*, 45 N.Y.2d 359, 362, 408 N.Y.S.2d 429, 434–35, 380 N.E.2d 257 (1978).[19]

**18.** The appellate court's factual finding that in the first interrogation detectives Bland and Fegan deliberately attempted to solicit a response from petitioner is supported by the record. *See* 55 Ill.App.3d at 183, 13 Ill.Dec. at 190, 370 N.E.2d at 1217.

**19.** *Pierce v. Cardwell*, 572 F.2d 1339 (9th Cir. 1978), and *United States v. Rodriguez-Gastelum*, 569 F.2d 482 (9th Cir.) (en banc) *cert. denied*, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978), are not controlling. To the extent that those cases are not limited to those situations where it is unclear whether a suspect has made a request for counsel, they are contrary to the law of this circuit. Furthermore, they are not persuasive.

**20.** If *Williams, supra,* is still valid, and any confession given subsequent to a request for counsel but before the counsel is furnished is *per se* invalid, then it would be impossible to waive a *Miranda* right to counsel once the right is asserted. The discussion in the text would apply only if there is some possibility of waiver of the *Miranda* right to counsel. *See United States v. Durham*, 475 F.2d 208 (7th Cir. 1973).

**21.** *See United States v. Hernandez*, 574 F.2d 1362 (5th Cir. 1978) (repeated *Miranda* warning of suspect creates an inference that the waiver was not voluntary); *Canal Zone v. Gomez*, 566 F.2d 1289 (5th Cir. 1978) (confession inadmissible when given 31 hours after the refusal of a request for counsel) (refusal accompanied by intimidating language) (intervening admonition of *Miranda* warnings irrelevant); *People v. Medina*, 71 Ill.2d 254, 16 Ill.Dec. 447, 375 N.E.2d 78 (1978) (when request for counsel not honored at 3:00 a. m., confession at 8:00 a. m. must be suppressed (waiver not valid); *People v. Grant*, 45 N.Y.2d 358, 362, 408 N.Y.S.2d 429,

## B. Waiver of Fifth Amendment Right to Counsel

Prior to giving his second and third confession on January 13, petitioner signed written waivers of his *Miranda* rights. He claims that they should not be given effect, arguing that they do not meet the requirements for waiver, as they are stated in *Miranda,* quoted above; *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *United States ex rel. Williams v. Twomey, supra;* and *White v. Finkbeiner, supra.*[20] *See* pp. 1134–1136, *supra.* Several other recent cases support petitioner's position.[21]

The petitioner also notes that in refusing to suppress the second and third confessions, the Illinois Appellate Court relied en-

433, 380 N.E.2d 257 (1978) (*Miranda* waiver following assertion of right to counsel requires both traditional waiver by the suspect and scrupulous honoring of original request by the police).

*Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *Westover v. United States*, 384 U.S. 436, 494–97, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and *United States v. Rodriguez-Gastelum*, 569 F.2d 482 (9th Cir.) (en banc), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978) are not contrary. *Mosley* expressly distinguished the *Miranda* right to counsel when it ruled that the right to silence could be waived. 423 U.S. at 101 n.7, 96 S.Ct. 321; 423 U.S. at 110 n.2, 96 S.Ct. 321 (White, J., concurring). *See White v. Finkbeiner*, 570 F.2d at 200 n.1. *Westover*, a companion case to *Miranda*, stated that it might be permissible for a second law enforcement agency, at a later time and a different place, to obtain an admissible confession after a first agency failed to give *Miranda* warnings. 384 U.S. at 496, 86 S.Ct. 1602. In this case, however, there was not a mere failure to give a warning in the first case, but a refusal to honor a request for counsel. *Rodriguez-Gastelum* dealt only with situations where the interrogating officer is uncertain as to the intention of the suspect and attempts to obtain a clarification. 569 F.2d at 484. In any event, the dissenting opinion in *Rodriguez-Gastelum*, 569 F.2d at 489 (Hufstedler, J., dissenting), is more persuasive to this court.

Note also that *United States v. Brown*, 569 F.2d 236 (5th Cir. 1978) (en banc) is not on point, since the court there expressly held that the suspect need not have been given *Miranda* warnings, since she was not in custody. 569 F.2d at 239 n.3.

tirely on *People v. White*, 61 Ill.2d 288, 335 N.E.2d 457 (1975), the Illinois Supreme Court decision that was reversed in *White v. Finkbeiner, supra.*

■ Under these circumstances, the court feels bound to follow the *per se* rule of *Williams, see* pp. 1134–1135 *supra*, and rule that the second and third confessions should be inadmissible. The mere recitation of the *Miranda* rights, coupled with the signing of the written waiver form, was not enough to validly waive the petitioner's original *Miranda* request for counsel.[22] *Cf. Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (*Miranda* warnings alone not sufficient to dissipate the taint of a prior inadmissible confession).

### C. *Original Fifth Amendment Violation Tainted Subsequent Confessions*

■ Even if the *Miranda* waivers petitioner executed before his second and third confessions were found to be valid, those confessions must still be excluded as the tainted products of the original illegal confessions.

The fruit of the poisonous tree doctrine, requiring the exclusion of the tainted fruit of police conduct abridging constitutional rights, derives from *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Once a defendant makes a prima facie showing of unconstitutional conduct by the government in obtaining its evidence, the burden shifts to the government to demonstrate either that it did not in fact obtain any later evidence by exploiting the primary illegality, or that any causal connection had become so attenuated that the taint was dissipated. *See United States v. Massey*, 437 F.Supp. 843, 855–58 (M.D.Fla.

1977) (thorough review of taint doctrine in fifth and sixth amendment cases).

*United States ex rel. Williams v. Twomey, supra*, also controls in this area, as well. In *Williams*, the Seventh Circuit ruled that statements given to the Chicago police and the Cook County State's Attorney's Office were tainted by a statement obtained in violation of Williams' *Miranda* right to counsel by the Indiana State Police on the preceding day. The court ruled that the passage of several hours and the transportation of Williams across state lines to Chicago for further interrogation were irrelevant.

It is obvious that the three statements taken from appellant in Chicago are the direct and tainted fruits of the illegally obtained statements taken in Indiana the day before. Appellant was in the continuous custody of police . . . . The lapse of only a few hours in the interrogation and the removal of appellant a few miles to the jurisdiction of another police authority certainly did not constitute a sufficient break in the stream of events to insulate the October 21 statements from the illegally obtained statement of the previous day. . . .

Their admission was constitutional error. 467 F.2d at 1252. Similarly, the passage of several hours and the transportation of petitioner to the county detectives' office did not constitute a sufficient break in the stream of events in this case to insulate the second and third confessions from the illegally obtained first confession.[23]

The rule of *Williams* is in accord with applicable Supreme Court precedents. Although the Court has not expressly applied the fruit of the poisonous tree rule to violations of the *Miranda* safeguards, *see Michigan v. Tucker*, 417 U.S. 433, 447, 94 S.Ct.

---

**22.** If a *per se* rule were not applied in this matter, the court would have to hold an evidentiary hearing to resolve the disputed testimony as to the petitioner's repeated requests for counsel. *See* notes 3, 7, 8, 10, 12, *supra.*

**23.** The nine and twelve hour gaps between the first and second and the first and third confessions is not sufficient to dissipate the taint. In

*Wong Sun* itself, there were several days between the original suppressed illegality and the subsequently admitted confession. *See Brown v. Illinois*, 422 U.S. at 604 n.1, 95 S.Ct. 2254. *Cf. United States v. Monti*, 557 F.2d 899 (1st Cir. 1977) (several days, intervening meeting with counsel, and affirmative waiver sufficient to dissipate taint).

2357, 41 L.Ed.2d 182 (1974); *United States v. Lemon*, 550 F.2d 467, 472 & n.6 (9th Cir. 1977), it has observed that "the same principle that prohibits the use of [illegally obtained] confessions . . . also prohibits the use of any testimony impelled thereby—the fruit of the poisonous tree . . . ." *Harrison v. United States*, 392 U.S. 219, 222, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968). *See also Darwin v. Connecticut*, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968);[24] *United States v. Bayer*, 331 U.S. 532, 540–41, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947). Other courts have applied a similar rule. *See U. S. v. Hill*, 5 M.J. 114, 115–16 (C.M.A.1978), (confession made nine hours after unhonored request for counsel held inadmissible, despite subsequent waiver of rights); *People v. Taylor*, 61 Ill.App.3d 37, 18 Ill.Dec. 353, 377 N.E.2d 838 (2d Dist. 1978) (statement made 12 hours after *Miranda* violation held inadmissible, despite written waiver of *Miranda* rights;[25] *cf. Maglio v. Jago*, 580 F.2d 202, 207 (6th Cir. 1978) (taint rule applied to sixth amendment right to counsel); *United States ex rel. Hudson v. Cannon*, 529 F.2d 890 (7th Cir. 1976) (taint rule applied to violation of *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 [1964]).[26] *See also* Stone, *The Miranda Doctrine in the Burger Court*, 1977 Sup.Ct.Rev. 99, 115–25.

## V.

### A. Sixth Amendment Violations

 Petitioner's second and third confessions were also obtained in violation of his sixth amendment right to counsel.[27] The right to counsel attaches at the time that adversary judicial proceedings are initiated against a suspect, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 [1972] [plurality opinion]).[28] The right applies to all "crit-

**24.** "A principal reason why a suspect might make a second or third confession is simply that, having already confessed once or twice, he might think he has little to lose by repetition. If a first confession is not shown to be voluntary, I do not think a later confession that is merely a direct product of the earlier one should be held to be voluntary.

 . . . .

In consequence, when the prosecution seeks to use a confession uttered after an earlier one not found to be voluntary, it has, in my view, the burden of proving not only that the later confession was not itself the product of improper threats or promises or coercive conditions, but also that it was not directly produced by the existence of the earlier confession. *See United States v. Bayer*, 331 U.S. 532, 540–41, 67 S.Ct. 1394, 1398–1399, 91 L.Ed. 1654. Here, the facts as stated by the state courts fail to satisfy this additional burden. Petitioner's third confession followed the completion of his inadmissible second confession by only a few hours. In the interval he appears to have talked to no one except his jailors and the coroner. There is no indication that he had any reason to think that a third confession would increase his peril." *Darwin v. Connecticut*, 391 U.S. at 350–51, 88 S.Ct. at 1490. (Harlan, J., concurring).

**25.** Note that in *Taylor*, the same district of the Illinois Appellate Court that decided this case followed *White v. Finkbeiner, supra*. The court mentioned its decision in *People v. Sanders, supra*, but could not logically distinguish it.

*See People v. Taylor*, 61 Ill.App.3d at 44, 18 Ill.Dec. at 358, 377 N.E.2d at 843.

**26.** In *Hudson*, the Seventh Circuit refused to extend the balancing approach taken by the Supreme Court in *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) (exclusionary rule need not be applied to exclude testimonial evidence of third parties when *Miranda* guidelines not followed in pre-*Miranda* case) (social interest in trustworthy evidence balanced against the need for deterrence of improper police conduct), to an *Escobedo* violation in a post-*Miranda* case. 529 F.2d at 892–93. This court applied a similar analysis in finding that *Tucker* does not apply to post-*Miranda* denials of the *Miranda* right to counsel.

**27.** "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const., amend. VI.

**28.** There is some dispute as to whether the right to counsel can attach prior to the beginning of adversary judicial proceedings, upon the suspect's arrest. *See United States v. Miller*, 432 F.Supp. 382, 385–90 (E.D.N.Y.1977). *Compare Brewer v. Williams*, 430 U.S. 387, 410, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (Powell, J., concurring) *and Kirby v. Illinois*, 406 U.S. 682, 692 n.2, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (Brennan, J., dissenting) *and Coleman v.*

ical stages" in the prosecution, *Kirby v. Illinois*, 406 U.S. at 690, 92 S.Ct. 1877 (plurality opinion). *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), represents one such critical stage, *cf. Kirby v. Illinois*, 406 U.S. at 688–90, 92 S.Ct. 1877 (plurality opinion); *Coleman v. Alabama*, 399 U.S. 1, 16, 90 S.Ct. 1999, 26 L.Ed.2d 387 (Douglas, J., concurring).

[redacted] The determination of the time that adversary judicial proceedings begin in Illinois is a question of federal constitutional law. *See United States ex rel. Burton v. Cuyler*, 439 F.Supp. 1173, 1179–81 (E.D.Pa. 1977). In making this determination, however, a federal court will defer to a state statute or opinion fixing the time that adversary judicial proceedings commence, if the time chosen is prior to that required by *Kirby*. *See United States ex rel. Robinson v. Zelker*, 468 F.2d 159, 160–61 n.2 (2d Cir. 1972); *United States ex rel. Burton v. Cuyler*, 439 F.Supp. at 1181. *See also United States v. Duvall*, 537 F.2d 15, 21–22 (2d Cir. 1976). Under Illinois law, prosecutions are commenced upon the issuance and filing of a complaint, information, or indictment. *See* Ill.Rev.Stat., ch. 38, §§ 111–1—111–2; *People v. Billings*, 52 Ill.App.3d 414, 424, 9 Ill.Dec. 903, 912, 367 N.E.2d 337, 346 (1st Dist., 1977); *People v. Robins*, 33 Ill.App.3d 634, 637, 338 N.E.2d 222, 225 (4th Dist. 1976). Thus, "[t]here is no question but that after the defendant is charged either by information, complaint, or indictment, it is an adversary proceeding and he is so entitled to counsel" *People v. McDonald*, 23 Ill.App.3d 86, 90, 318 N.E.2d 489, 491 (2d Dist. 1974), aff'd 62 Ill.2d 448, 343 N.E.2d 489 (1976). *Accord, People v. Marshall*, 47 Ill.App.3d 784, 786, 8 Ill.Dec. 129, 131, 365 N.E.2d 367, 369 (1st Dist. 1977); *People v. Hinton*, 23 Ill.App.3d 369, 372, 319 N.E.2d 313, 315–16 (2d Dist. 1974).

It is therefore irrelevant for sixth amendment purposes that no indictment or information was filed against petitioner on January 13. Since a complaint had been issued and filed, adversary judicial proceedings had begun against petitioner by 5:00 p. m. on January 13, *see* p. 1132 *supra*. His sixth amendment rights had therefore attached.

The sixth amendment rule governing this case was established in *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1974), where the Supreme Court held "that the petitioner was denied the basic protection of . . . [the sixth amendment] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." 377 U.S. at 206, 84 S.Ct. at 1203. "That the incriminating statements were elicited surreptitiously in the *Massiah* case, and otherwise here, is constitutionally irrelevant. Rather, the clear rule of *Massiah* is that once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him." *Brewer v. Williams*, 430 U.S. at 400, 97 S.Ct. at 1240 (citations omitted).

[redacted] It is also irrelevant that the second and third interrogations pertained to different crimes than the first interrogation and were conducted by a different police agency.[29] In *Massiah* itself, information from the illegally induced conversation was used to broaden the charges against Massiah, resulting in new counts being brought

*Alabama*, 399 U.S. 1, 16, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (Douglas, J., concurring) *and Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) *and United States v. Carr*, 445 F.Supp. 1383 (D.Conn.1978) *with Moore v. Illinois*, 434 U.S. 220, 228, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) *and United States v. Ash*, 413 U.S. 300, 303 n.3, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) *and id.*, at 321–22, 93 S.Ct. 2568 (Stewart, J., concurring in the judgment) *and Michigan v. Tucker*, 417 U.S. 433, 438, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) *and United States v. Craig*, 573 F.2d 455, 474–75 (7th Cir. 1977).

29. Note that all three crimes occurred on the same evening, and appeared to be part of a continuous and related series of criminal activity. Also, note that the petitioner was never released from custody, and had not contacted his lawyer. *Cf. Darwin v. Connecticut*, 391 U.S. at 350–51, 88 S.Ct. 1488 (Harlan, J., concurring) (quoted at note 24, *supra*.)

**1140**

against him, as well as the introduction of new defendants. *See United States v. Merritts*, 527 F.2d 713, 715 n.4 (7th Cir. 1975). "*Massiah* applies to incriminating statements about past conduct obtained after indictment through the equivalent of police interrogation." *United States v. Merritts*, 527 F.2d at 716.[30]

B. *Waiver of Sixth Amendment Right to Counsel*

Since *Massiah* applied to the second and third confessions, and no counsel was present when those statements were made, they were *per se* inadmissible, unless petitioner waived his *Massiah* right to counsel. Waiver of the sixth amendment right to counsel is possible, but only if there is an intentional relinquishment of a known right or privilege. *Brewer v. Williams*, 430 U.S. at 404, 97 S.Ct. 1232 (citing *Johnson v. Zerbst*, 304 U.S. at 464, 58 S.Ct. 1019). *See generally United States v. Durham*, 475 F.2d 208 (7th Cir. 1973); *United States v. Crisp*, 435 F.2d 354 (7th Cir. 1970), *cert. denied*, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971).

The state must meet a very high burden of proof, however, in order to show a waiver.[31] As the Court held in *Brewer*: "the right to counsel does not depend upon a request by the defendant . . . and . . . courts indulge in every reasonable presumption against waiver. . . . This strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings." *Brewer v. Williams*, 430 U.S. at 404, 97 S.Ct. at 1242.[32] It is not enough that the defendant be informed of and appear to understand his right to counsel. "[W]aiver requires not merely comprehension but relinquishment . . . ." *Id.*

Furthermore, waiver for sixth amendment purposes will not be presumed merely because the state can demonstrate a waiver of the *Miranda* fifth amendment right to counsel, for there is authority for applying a higher standard for waiver of the sixth amendment right to counsel. *United States v. Satterfield*, 558 F.2d 655, 657 (2d Cir. 1976), presumably including the full requirements for waiver of the right to counsel at trial, *see Faretta v. California*, 422 U.S. 806, 835–36, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The state's high burden in this area is even harder, "if not impossible, to sustain when the record shows that a request for counsel was made which was not honored before questioning continued." *Maglio v. Jago*, 580 F.2d 202, 205 (6th Cir. 1978).

**30.** There has been some division on this point in the lower courts. *Compare Saltys v. Adams*, 465 F.2d 1023, 1027 n.6 (2d Cir. 1972) (dicta) (once in custody for crime, right to counsel should be applied to any subsequent critical stage, even if for a second crime) and *Thomas v. Leeke*, 393 F.Supp. 282, 286 (D.S.C.1975) (following *Saltys*) with *Boyd v. Henderson*, 555 F.2d 56, 61 (2d Cir.) (disapproving dicta in *Saltys*) (same crime must be involved), *cert. denied*, 434 U.S. 927, 98 S.Ct. 410, 54 L.Ed.2d 286 (1977) and *Sanchell v. Parratt*, 530 F.2d 286, 290 n.2 (8th Cir. 1976) (sixth amendment only applies to lineup confrontations if the same charge is involved). *See also Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968) (immaterial that an individual is in custody for another crime when safeguarding fifth amendment rights). This court is persuaded by the *Thomas* opinion, and by the facts of *Massiah* that it has reached the proper result in this case. *See also* note 29 *supra*.

**31.** The Fifth Circuit recently applied a lower standard of waiver in *United States v. Brown*, 569 F.2d 236 (5th Cir. 1978) (en banc). *See also Alexander v. Smith*, 582 F.2d 212 (2d Cir. 1978) (finding waiver of sixth amendment right to counsel) (post-*Brewer* case). As the dissent in *Brown* pointed out, the majority's opinion appears to be in conflict with *Brewer*. *See* 569 F.2d at 241, 251 (Simpson, J., dissenting).

**32.** "A strict standard of waiver has been applied to those rights guaranteed to a criminal defendant to insure that he will be accorded the greatest possible opportunity to utilize every facet of the constitutional model of a fair criminal trial.

. . . The Constitution requires that every effort be made to see to it that a defendant in a criminal case has not unknowingly relinquished the basic protections that the Framers thought indispensable to a fair trial." *Schneckloth v. Bustamonte*, 412 U.S. 218, 241–42, 93 S.Ct. 2041, 2055, 36 L.Ed.2d 854 (1973).

■ Since this court has found that the state has not even met its burden for establishing a waiver of petitioner's fifth amendment right to counsel, it is clear, *a fortiori*, that it has not established a waiver of his sixth amendment right to the presence of counsel, particularly in light of petitioner's prior request that his counsel be present.[33]

## VI.

■ The state argues that the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), which limited federal habeas review of state prisoners' fourth amendment claims, should be extended to state prisoners' claims based on the fifth and sixth amendments. This question has been noted by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 n.11, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and in *Brewer v. Williams*, 430 U.S. 387, 413–14, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). It has also been noted by the Seventh Circuit. *See White v. Finkbeiner*, 570 F.2d 194, 200 & n.2 (7th Cir. 1978); *United States ex rel. Henne v. Fike*, 563 F.2d 809 (7th Cir. 1977), *cert. denied*, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776 (1978). This court has carefully considered the arguments for extending *Stone*, but finds more persuasive the arguments that *Stone* is and should remain limited to fourth amendment claims.

In *Stone v. Powell, supra*, Powell sought federal habeas review of his California state court conviction for murder. The evidence at trial included a revolver taken from him upon his arrest for violation of a local vagrancy ordinance. The state courts, both at trial and on appeal, rejected Powell's arguments that the ordinance was unconstitutional, the search invalid, and the gun inadmissible as evidence in the murder case. Powell's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[34] was denied by the federal district court, but granted by the court of appeals. *See* 507 F.2d 93 (9th Cir. 1974), *rev'd*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

The Supreme Court reversed the court of appeals, holding

"only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review."[35]

428 U.S. at 494–95 n.37, 96 S.Ct. at 3053.

Unfortunately, the Supreme Court's decision is open to widely divergent interpretations.[36] The decision seems to be grounded

---

**33.** Since the constitutional invalidity of petitioner's second and third confessions under the sixth amendment is identical and since the first confession was apparently not taken in violation of the sixth amendment because adversary judicial proceedings had not yet begun, *see* note 28 *supra*, there is no question of sixth amendment taint in this case. The Seventh Circuit has, though, applied the taint doctrine to sixth amendment violations. *United States ex rel. Hudson v. Cannon*, 529 F.2d 890 (7th Cir. 1976); *see United States v. Massey*, 437 F.Supp. 843, 861 (M.D.Fla.1977).

**34.** For general discussions of the history and purposes of the writ of habeas corpus, *see* Cover and Aleinikoff, *Dialectical Federalism: Habeas Corpus and the Court*, 86 Yale L.J. 1035 (1977); Note, *Developments in the Law— Federal Habeas Corpus*, 33 Harv.L.Rev. 1938 (1970); Friendly, *Is Innocence Irrelevant: Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142 (1970); Oaks, *Legal History in the High Court—Habeas Corpus*, 64 Mich.L.

Rev. 451 (1966); Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv.L.Rev. 441 (1963); Brennan, *Federal Habeas Corpus and State Prisoners: An Exercise in Federalism*, 7 Utah L.Rev. 423 (1961); Reitz, *Federal Habeas Corpus: Impact of an Abortive State Proceeding*, 74 Harv.L. Rev. 1315 (1961); Hart, *The Supreme Court, 1958 Term—Foreword: The Time Chart of the Justices*, 73 Harv.L.Rev. 84 (1959).

**35.** The Court continued:
"Our decision does not mean that the federal court lacks jurisdiction over such a claim, but only that the application of the rule is limited to cases in which there has been both such a showing and a Fourth Amendment violation." 428 U.S. at 494–95 n.37, 96 S.Ct. at 3503.

**36.** *See* Soloff, *Litigation and Relitigation: The Uncertain Status of Federal Habeas Corpus for State Prisoners*, 6 Hofstra L.Rev. 297, 303 (1978).

on several premises, and commentators have advanced different rationales for the opinion.[37] All of these rationales can find some support in the opinion. Some of them are not logically limited to fourth amendment violations. Adopting one of the later as the central holding of *Stone v. Powell* would thus require that the decision be extended to certain other classes of constitutional claims.[38]

One premise identified by several commentators as central to *Stone v. Powell* is that federal habeas relief should not be available to all prisoners whose constitutional rights were violated when they were convicted, but should be reserved for the innocent.[39] Two strands of this argument have developed. The first interprets the decision as being concerned with the distinction between the factually guilty and the factually innocent, with only the arguably innocent being entitled to habeas.[40] If this view were adopted, the petitioner in this case would not be entitled to habeas relief on either his fifth or sixth amendment claims.

■ The other strand views the decision as being concerned with the factfinding process. Constitutional claims based on doctrines which protect the accuracy of the factfinding process, such as the rule against the admission of involuntary confessions in the prosecution's case-in-chief, *see e. g., Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1963), could be raised on federal habeas, while claims which did not affect the reliability of the process, such as fourth amendment claims or failure to give the *Miranda* warnings, could not.[41] Under this view, petitioner's fifth amendment claims would be barred. His sixth amendment claims, however, might still be raised, as the right to counsel has been viewed as protecting the reliability of the factfinding process.[42]

Both of these strands find their origin in Justice Powell's concurring opinion in

---

**37.** The opinion has generated much discussion in the academic journals. Almost all of the discussion has been highly unfavorable. *See* Boyte, *Federal Habeas Corpus After* Stone v. Powell: *A Remedy Only for the Arguably Innocent?*, 11 U.Rich.L.Rev. 291 (1977); Green, *Stone v. Powell: The Hermeneutics of the Burger Court*, 10 Creighton L.Rev. 655 (1977); Soloff, *supra* note 36; Note, Stone v. Powell: *The End of Collateral Review for Fourth Amendment Claims by State Prisoners?*, 13 Cal. W.L.Rev. 558 (1977); Comment, *Habeas Corpus After* Stone v. Powell: *The "Opportunity for Full and Fair Litigation" Standard*, 13 Harv. C.R.–C.L.L.Rev. —— (1978) (forthcoming in Spring, 1978, issue); Comment, *Protecting Fundamental Rights in State Courts, Fitting a State Peg to a Federal Hole*, 12 Harv.C.R.–C.L. L.Rev. 64 (1977); Note, Stone v. Powell *and the New Federalism: A Challenge to Congress*, 14 Harv.J.Leg. 152 (1976) [hereinafter cited as "*New Federalism*"]; Comment, *Federal Habeas Corpus: The Relevance of Petitioner's Innocence*, 46 U.M.K.C.L.Rev. 382 (1978) [hereinafter cited as "*Innocence*"]; Note, Stone v. Powell: *The Fourth Amendment Exclusionary Rule, Federal Habeas Corpus and the Full and Fair Standard*, 12 Val.L.Rev. 91 (1977) [hereinafter cited as "*Exclusionary Rule*"]. *See also* Cover and Aleinikoff, *supra* note 34.

**38.** In his dissent, Justice Brennan expressed apprehension that the rationale of *Stone* might later be applied to double jeopardy, entrap-

ment, self-incrimination, *Miranda*, improper identification, attorney-client privilege, unconscionable evidence gathering, speedy trial, jury trial, and first amendment overbreadth claims. 428 U.S. at 517–18 & 518 n.13, 96 S.Ct. 3037 (Brennan, J., dissenting). The majority, however, rejected Justice Brennan's fears as "misdirected hyperbole." 428 U.S. at 494–95 n.37, 96 S.Ct. 3037.

**39.** *See, e. g.,* Cover and Aleinikoff, *supra* note 34, at 1076, 1086–94; Green, *supra* note 37, at 658–59.

**40.** *See* Boyte, *supra* note 37, *passim*; Cover and Aleinikoff, *supra* note 34, at 1086–90; Soloff, *supra* note 36, at 303–04, 309–12; *Exclusionary Rule, supra* note 37, at 96–99.

**41.** *See* Cover and Aleinikoff, *supra* note 34, at 1086–94; Soloff, *supra* note 36, at 303–04, 312–13; *Innocence, supra* note 37, at 383; *Exclusionary Rule, supra* note 37, at 96–99. *See also* Stone v. Powell, 428 U.S. at 496–97, 96 S.Ct. 3037 (Burger, C. J., concurring). This concern with the integrity of the factfinding process finds its root in the retroactivity cases, *e. g., Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). *See* Soloff, *supra* note 36, at 303–04, 312–13.

**42.** See p. 1143, note 51, *infra*.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 250–75, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (Powell, J., concurring). There, joined by the Chief Justice and Justice Rehnquist, he reviewed the history of habeas corpus and concluded that it should be applied in fourth amendment cases only when the petitioner could make a "colorable showing of innocence." Although Justice Powell limited his discussion to fourth amendment cases, he clearly felt that the same considerations applied to cases involving fifth and sixth amendment issues.[43]

Another suggested ground for the decision is based on the difference between Supreme Court decisions defining personal constitutional rights and those which set up prophylactic rules to enforce constitutional rights.[44] Adherents of this approach suggest that *Stone v. Powell* held that the fourth amendment exclusionary rule should not be enforced through federal habeas corpus because it does not define a personal right. Similarly, they claim that *Miranda* violations, which do not infringe upon personal constitutional rights, but merely prophylactic rules set up for the protection of those rights, see *Michigan v. Tucker*, 417 U.S. 433, 443–44, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), also should not be entitled to federal habeas review.[45]

The same balancing analysis used by the Court in limiting the fourth amendment exclusionary rule, it is claimed, applies with equal force to *Miranda's* exclusionary requirements, and perhaps to other prophylactic rules as well.[46] Thus, while this analysis would probably not apply to sixth amendment claims, see *United States ex rel. Hudson v. Cannon*, 529 F.2d 890, 892–94 (refusing to extend *Michigan v. Tucker* to *Escobedo* violations because of differences in balancing process when sixth amendment claims are at issue); cf. *Brewer v. Williams*, 430 U.S. at 422–28, 97 S.Ct. 1232 (Burger, C. J., dissenting) (calling for consideration of the applicability of *Stone v. Powell*) (identifying the Court's refusal to apply *Stone* as based on the difference between the fourth and sixth amendments), it would bar petitioner from bringing his fifth amendment claims before this court.

Although this court finds the later analysis to be more compelling than the former, cf. *White v. Finkbeiner*, 470 F.2d at 200 (strong argument can be made that *Stone* applies to *Miranda*), it is not convinced that either accurately describes the basis of the Supreme Court's decision.[47] Instead, the court is persuaded by those commentators who have taken a different approach and argued that *Stone v. Powell* is grounded primarily in fourth amendment considera-

---

**43.** See. e. g., 412 U.S. at 262 n.16, 93 S.Ct. 2041 (Powell, J., concurring) (citing Amsterdam, *Search, Seizure, and Section 2255: A Comment*, 112 U.Pa.L.Rev. 378 [1964]); 412 U.S. at 265–66 & 266 n.23, 93 S.Ct. 2041, 36 L.Ed.2d 854 (Powell, J., concurring) (citing Friendly, *supra* note 34).

**44.** For a discussion of the apparent subconstitutional nature of the fourth amendment and *Miranda* exclusionary rules, *see* Monaghan, *The Supreme Court, 1974 Term-Foreword: Constitutional Common Law*, 89 Harv.L.Rev. 1 (1975); Schrock and Welsh, *Reconsidering the Constitutional Common Law*, 91 Harv.L.Rev. 1117 (1978); Schrock and Welsh, *Up from Calandra: The Exclusionary Rule as a Constitutional Requirement*, 59 Minn.L.Rev. 251 (1974). *See also United States ex rel. Hudson v. Cannon*, 529 F.2d 890 (7th Cir. 1976).

**45.** *See* Note, *The Scope of Federal Habeas Corpus Relief for State Prisoners*, 32 U.Miami L.Rev. 417, 431–32 (1978).

**46.** *See generally* Soloff, *supra* note 36.

**47.** Two other rationales for the decision have been advanced. One is that the Court felt that insufficient concern was being paid to the interest of state courts in administering their criminal justice systems, and that federal habeas review undervalued and undermined their competence. *See New Federalism, supra* note 37, at 156–71; *Exclusionary Rule, supra* note 37, at 96–99. The Supreme Court specifically disavowed a general deference to state courts in habeas cases, *see* 428 U.S. at 494–95 n.37, 96 S.Ct. 3037. Also, the criticism of this theory in *New Federalism, supra*; and in Neuborne, *The Myth of Parity*, 90 Harv.L.Rev. 1105 (1978), is persuasive.

The other suggested rationale for *Stone v. Powell* is the supposed burden of state habeas cases on the federal courts. For a time around 1970, the number of state habeas cases in the federal courts rose rapidly, but that trend has ended and the number has declined since 1970. *See* [1978] Admin. Office U.S. Courts Ann.Rep. 76.

tions.[48] *See Wilson v. Henderson*, 584 F.2d 1185, at 1189 (2d Cir. 1978).

The balancing approach to the exclusionary rule taken by the Supreme Court in *Stone v. Powell* is similar to that applied in recent years in many other fourth amendment cases. *See, e. g., United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Even though the Court reaffirmed, 428 U.S. at 493, 96 S.Ct. 3037, the fourth amendment exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1084 (1961), the Court's opinion, in reviewing many decisions where the rule has been limited, 428 U.S. at 482–95, 96 S.Ct. 3037, suggests that its primary concern was with fourth amendment doctrine, rather than federal habeas law in general. *See* Boyte, *supra* note 37, at 298–99, 313–14; Soloff, *supra* note 36, at 307, 314–15; *Innocence, supra* note 37, at 384 n.13; *Exclusionary Rule, supra* note 37, at 99.

Several reasons support this interpretation of *Stone v. Powell*. First, the language of the opinion itself, as quoted above at p. 1141, clearly indicates that the decision was meant to be a limited one. The Court, in responding to Justice Brennan's charge that it planned to expand the opinion to include other constitutional violations, *see* 428 U.S. at 517–18 & 518 n.13, 96 S.Ct. 3037 (Brennan, J., dissenting), stated that "the hyperbole of the dissenting opinion is misdirected," and emphasized the limited nature of its opinion, 428 U.S. at 494–95 n.37, 96 S.Ct. 3037, 3052. *See Greene v. Massey*, 546 F.2d 51 (5th Cir. 1977) (construing above passage as demonstrating the limited nature of *Stone v. Powell*), *rev'd on other grounds*, 437 U.S. 15, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); Boyte, *supra* note 34, at 296–99.

Furthermore, the Supreme Court has heard several state habeas cases since *Stone v. Powell* in which fifth and sixth amendment rights were at issue without choosing to expand the doctrine. It is true that in some the Court, or a member thereof, specifically noted the question and observed that it remained open. *See Wainwright v. Sykes*, 433 U.S. 72, 87 n.11, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (*Miranda* violation); *Castaneda v. Partida*, 430 U.S. 482, 508 n.1, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) (Powell, J., concurring) (grand jury discrimination); *Brewer v. Williams*, 430 U.S. 387, 413–14, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (sixth amendment right to counsel). In other cases, however, the Court has considered the merits of habeas claims without ever mentioning *Stone v. Powell*. *See Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) (double jeopardy); *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978) (double jeopardy); *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (right to counsel) (opinion for the Court by Powell, J.); *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (pretrial identification) (sixth amendment); *see also Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 2419, 57 L.Ed.2d 290 (1978) (Marshall J., concurring). (*Stone v. Powell* does not apply to fifth amendment claims). Indeed, in *Greene*, the applicability of *Stone v. Powell* was specifically argued to the Justices, *see* Brief of Respondent at 9–21, following the Fifth Circuit's ruling that the decision does not apply to double jeopardy claims, *Greene v. Massey*, 546 F.2d 51 (5th Cir. 1977). The Supreme Court reversed the Fifth Circuit's denial of habeas relief without discussing *Stone v. Powell*. Thus, the limited nature of the *Stone v. Powell* holding, combined with the Court's repeated failure to extend the ruling, indicates that a majority of the members of the Court are unwilling to expand this doctrine.[49]

**48.** *See, e. g.*, Soloff, *supra* note 36 at 307–08. *See generally* p. 1144, *infra*.

**49.** Two members of the Court's majority in *Stone v. Powell* have expressed their disagreement with the guilt/innocence rationale that

some commentators claim is the central tenet of the case, and which formed the basis of Justice Powell's concurrence in *Schneckloth, supra. See Kaufman v. United States*, 394 U.S. 217, 242, 89 S.Ct. 1068, 22 L.Ed.2d 227 (Harlan, J., joined by Stewart, J., concurring) (disagree-

Other lower courts have also failed to extend *Stone v. Powell.* Although this court is aware of no lower court opinion extensively discussing the extension of *Stone,* it is aware of eight decisions which have considered the matter. In six cases, the courts have stated that it does not apply to fifth or sixth amendment claims. *See Wilson v. Henderson,* 584 F.2d 1185, 1189 (2d Cir. 1978) *(Miranda )* (dicta) (declined to extend *Stone* in that case); *Smith v. Wainwright,* 581 F.2d 1149, 1151–52 (5th Cir. 1978) *(Miranda )* (dicta); *Swicegood v. Alabama,* 577 F.2d 1322, 1325 (5th Cir. 1978) (lineup—due process claim); *Morgan v. Hall,* 569 F.2d 1161, 1168–69 (1st Cir. 1978) (prosecutorial questioning of defendant concerning exercise of *Miranda* right to silence) (violation of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 [1976]); *Greene v. Massey,* 546 F.2d 51, 53 n.6 (5th Cir. 1977) (double jeopardy), *rev'd on other grounds,* 437 U.S. 15, 98 S.Ct. 2151, 57 L.Ed.2d 15; *United States ex rel. Burton v. Cuyler,* 439 F.Supp. 1173, 1182 n.14 (E.D.Pa.1977) (lineup—sixth amendment). Only in *Richardson v. Stone,* 421 F.Supp. 577, 579 (N.D.Cal. 1976) *(Stone v. Powell* applies to *Miranda* violations) (alternative holding: no *Miranda* violation); and *Moore v. Cowan* (W.D.Ky.) (unreported), *aff'd on other grounds,* 560 F.2d 1298, 1301 (6th Cir. 1977) *(Doyle* violation) (alternative holding: harmless error), were extensions of *Stone v. Powell* approved, and the discussion in those cases was dicta.

 Finally, this court notes that the Supreme Court has repeatedly stated that the rights protected by the fifth and sixth amendments are more closely related to the fairness and accuracy of a criminal trial than those guaranteed under the fourth amendment.[50] A passage from *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), is illustrative:

There is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment.

. . . . .

A strict standard . . . has been applied to those rights guaranteed to a criminal defendant to insure that he will be accorded the greatest possible opportunity to utilize every facet of the constitutional model of a fair criminal trial. Any trial conducted in derogation of that model leaves open the possibility that the trial reached an unfair result precisely because all the protections specified in the Constitution were not provided. A prime example is the right to counsel. For without that right, a wholly innocent accused faces the real and substantial danger that simply because of his lack of legal expertise he may be convicted. As Mr. Justice Harlan once wrote: 'the sound reason why [the right to counsel] is so freely extended for a criminal trial is the severe injustice risked by confronting an untrained defendant with a range of technical points of law, evidence, and tactics familiar to the prosecutor but not to himself.[51]

. . . . .

The protections of the Fourth Amendment are of a wholly different order, and have nothing whatever to do with promoting the fair ascertainment of truth at a criminal trial. . . . The guaran-

---

ing with Justice Black's suggestion that habeas relief be limited to the arguably innocent); *Schneckloth v. Bustamonte,* 412 U.S. at 249, 93 S.Ct. 2041 (Blackmun, J., concurring) (stating agreement with Justice Harlan's concurrence in *Kaufman )* (also stating general agreement with most of Justice Powell's *Schneckloth* concurrence); Boyte, *supra* note 37, at 310–15; Soloff, *supra* note 36, at 308; *Innocence, supra* note 37, at 384 n.13.

**50.** *See* Chase, *The Burger Court, the Individual, and the Criminal Process: Directions and Mis-*

*directions,* 52 N.Y.U.L.Rev. 518, 533–34 (1977). *See generally* Cover and Aleinikoff, *supra* note 34, at 1093–94 & n.263; *Innocence, supra* note 37, at 383.

**51.** There is no doubt that the right to counsel in pretrial situations plays a critical role in protecting and effectuating the right to counsel at trial. *See, e. g., Brewer v. Williams,* 430 U.S. at 398, 97 S.Ct. 1236; Chase, *supra* note 50, at 533–34.

tees of the Fourth Amendment stand "as a protection of quite different constitutional values . . . ." [quoting *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 416, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966)].

412 U.S. at 241–42, 93 S.Ct. at 2055.[52]

This court will not do what the Supreme Court and other lower courts have so far refused to do. It will not extend the opinion in *Stone v. Powell* to cover fifth and sixth amendment claims.[53] The doors of this court must remain open to prisoners whose meritorious claims to fifth and sixth amendment rights have been denied by the state courts.

### VII.

■ Finally, the state contends that the introduction of the petitioner's second and third confessions at the stipulated bench trial was harmless error. The Illinois Appellate Court found that the admission of petitioner's first confession, which it ruled was obtained in violation of *Miranda, supra,* was harmless error.[54] 55 Ill.App.3d at 183–84, 13 Ill.Dec. at 190–91, 370 N.E.2d at 1217–18. It is almost impossible to conceive, however, that the admission of three inadmissible confessions could ever be harmless error. The state has not cited any cases which have so held. It has certainly not shown that there is no reasonable possibility that the introduction of the three confessions might have contributed to the conviction. *See Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705

(1967). Accordingly, this court cannot find the error to have been harmless beyond a reasonable doubt. *See Chapman v. California, supra; Martin v. Indiana*, 521 F.2d 682, 685 (7th Cir. 1975); *cf. People v. Grant*, 45 N.Y.2d 358, 363–64, 408 N.Y.S.2d 429, 435–37, 380 N.E.2d 257 (1978) (vacating guilty plea when it followed erroneous denial of motion to suppress for violation of *Miranda* right to counsel) (error could rarely, if ever, be harmless).

The state further contends that even if the error is not harmless under traditional standards, the court must find it to be harmless in this case, since the petitioner stipulated to the state's case at trial. This argument is based on the holding of the Illinois Appellate Court that petitioner stipulated to the state's proof in the case and that the quantum of proof remaining after the suppression of the first confession was still sufficient to convict him.[55] 55 Ill. App.3d at 184, 13 Ill.Dec. at 191, 370 N.E.2d at 1218 (alternative holding: harmless error).

■ In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262, 92 S.Ct. at 499. It is this court's duty, *see Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), to make an independent review of the record of the stipulated bench trial, in

**52.** There has been strong opposition to this ordering of constitutional rights, at least to the extent that it denigrates the fourth amendment. *See, e. g., Stone v. Powell*, 428 U.S. at 506–33, 96 S.Ct. 3037 (Brennan, J., dissenting).

**53.** Because it is this court's conclusion that *Stone v. Powell* was not meant to be applied, and should not be applied, to fifth and sixth amendment cases, the court has not held a hearing nor made findings of fact concerning the good faith of the interrogating officers at the second and third interrogations. *See White v. Finkbeiner*, 570 F.2d at 202, *see* note 3 *supra.* Even though it is conceivable that *Stone v.*

*Powell* could be extended to *Miranda* violations, *see* p. 1143 *supra*, this court considers it unlikely that it will ever be extended to the violation of the sixth amendment right to counsel found in this case.

**54.** It is difficult to see how, under any circumstances, the first confession could be admissible for proof of the other two crimes.

**55.** The opinion also implies that the appellate court viewed the petitioner's stipulation to the statement of facts as providing, by itself, sufficient evidence for conviction.

order to determine the legal effect of the stipulation.[56] The relevant portion of the record is set out in the margin.[57]

**56.** The stipulated bench trial procedure used in this case is treated by the Illinois courts as being very similar to a guilty plea. The same admonitions are given to the defendant in a stipulated bench trial as are given at the taking of a bargained plea. *See People v. Smith,* 59 Ill.2d 236, 319 N.E.2d 760 (1974). Accordingly, *Santobello* is applicable here.

**57.** THE COURT: Do you have any questions at all?

THE DEFENDANT: One your Honor. I would like to know if I still have the right to appeal on the violation of my rights, if I can still do that?

THE COURT: Yes, that's something I haven't gotten to, but you do have that right.

Now, may I ask, do you have any problems about that, what is your problem now?

THE DEFENDANT: My problem?

THE COURT: Yes, sir?

THE DEFENDANT: I just personally feel that in questioning my rights, my rights were violated, this goes back to the syppression [sic] motion of last Friday and Wednesday.

MR. CICERO: [defense counsel] In other words, you want to appeal your suppression hearing, is that it?

THE DEFENDANT: Yes.

MR. MC WILLIAMS: [prosecutor] Judge, I think we should make a record on this now as far as the motion to suppress. He is asking about an appeal on that. Now, you understand that we had a hearing on that?

THE DEFENDANT: Yes.

MR. MC WILLIAMS: The judge has ruled against you on that particular aspect.

THE DEFENDANT: Yes, I do.

THE COURT: *If he pleads guilty,* in fact, *you are giving up your right to appeal that particular question.*

THE DEFENDANT: *I am?*

MR. CICERO: I don't believe so, I don't believe he is giving up any rights to appeal anything.

THE DEFENDANT: That's what my question is, your Honor.

THE COURT: Well, let's take a ten minute recess to find out for sure, have a seat.

(Whereupon a brief recess was taken.)

THE COURT: Mr. Sanders, I think the question you raised is a very good one. I think your attorney has talked to you about it.

THE DEFENDANT: Yes, your Honor.

THE COURT: *Do you now have something that will preserve his right to appeal, that's the main thing?*

MR. CICERO: Yes, Judge, we do. *We do want to preserve Mr. Sanders' right to appeal the evidentiary ruling entered by the Court last*

From the record, it is clear that petitioner did not stipulate to the truth of the prosecution's case. He only stipulated that the

*Friday.* Mr. McWilliams the defendant [sic] and I discussed the matter and we believe that Mr. McWilliams might tender an *offer of proof* to the Court.

MR. MC WILLIAMS: *Yes, Judge. I would offer and I understand that the defense will stipulate the evidence presented at the defendant's preliminary hearing, also the evidence presented at the motion to suppress that we had last week, and also the statement of facts I recited just moments ago in reference to the facts that we would prove in reference to this case would stand in lieu of actual testimony.*

MR. CICERO: *That's correct, Judge, we would stipulate that would be the State's proof in this case.* [R. 15–18]

THE COURT: . . . Now, Mr. Sanders, this is an unusual circumstance; usually we do not accept Criminal cases stipulations of testimony. You realize now that while you are not pleading guilty, it is as close to pleading guilty as I can think of, *you are still preserving your right to appeal the motion to suppress,* the decision that I made Friday. [R. 20]

THE COURT: Are you entering into this jury waiver and to the stipulation voluntarily without any threats made to you?

THE DEFENDANT: Yes, your Honor.

THE COURT: *Without any promises made to you other than perhaps that this would be to preserve your rights to an appeal on the motion to suppress.*

THE DEFENDANT: That is all. [R. 21]

THE COURT: . . . *[I]t is my understanding that the defendant wishes to appeal my ruling on the motion to suppress* and it has already been indicated. Of course, that the defendant is indigent, he is represented by the Public Defender, therefore, I would order that the Public Defender file a notice of appeal and I would order that the Appellate Defender represent the defendant in that appeal. . . . [R. 24]

. . . . [Discussion of dismissal of two other counts.]

THE COURT: Bearing in mind now, Mr. Sanders, that *should the Appellate Court disagree with me and return this for jury trial, it will be tried on all issues on all cases; do you understand that?*

THE DEFENDANT: Yes, your Honor. [R. 25]

[Emphasis added]. The court expresses no opinion as to whether the State can reinstate the two other charges if it chooses to retry defendant.

evidence stated by the prosecutor to the court, together with the record of the prior hearings in the case and the three challenged confessions, would be the case presented by the prosecutor. (R. 18–19).

 Furthermore, it is absolutely clear from the record that petitioner would not have entered into the bench trial stipulation without a guarantee from the trial judge and the prosecutor that he could appeal the motion to suppress. Initially, petitioner refused to plead guilty when he discovered he would lose his right to appeal. Not only did the judge assure him, with the prosecutor's approval, that his right to appeal the motions to suppress would be preserved, the judge specifically assured him that "should the Appellate Court disagree with me and return this for jury trial, it will be tried on all issues. . . ." (R. 25).[58] This court therefore finds that the prosecutor's and trial judge's promise that petitioner would have a right to appeal the trial court's ruling on the motion to suppress, together with their guarantee that if petitioner won such an appeal he would receive a new trial at which the confessions and stipulations would be inadmissible, were, as a matter of federal constitutional law, part of the inducement or consideration for petitioner's agreement to the stipulated bench trial. *See Santobello v. New York, supra; United States v. Michigan Carton Co.,* 552 F.2d 198, 202 (7th Cir. 1977) (appeal will be allowed from a conditional plea when the defendant relies upon the trial judge's representation that an appeal is permissible); *United States v. Brown,* 499

F.2d 829, 832 (7th Cir. 1974) (appeal will be allowed from a conditional plea when the defendant relies upon the trial judge's representation that an appeal is permissible). *See also United States ex rel. Ferris v. Finkbeiner,* 551 F.2d 185 (7th Cir. 1977), *cert. denied sub nom. Rowe v. Ferris,* 435 U.S. 932, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978); *United States ex rel. Baker v. Finkbeiner,* 551 F.2d 180 (7th Cir. 1977); *People v. Schleyhahn,* 4 Ill.App.3d 591, 281 N.E.2d 409, 412 (4th Dist. 1972).[59] These promises must be enforced, *see Santobello v. New York, supra; United States v. Bowler,* 585 F.2d 851, 853–855 (7th Cir. 1978), and petitioner is entitled to a new trial on all issues *see United States v. Bowler,* 585 F.2d at 855–856 (remedy for plea agreement not honored by the government may be fashioned by the court using its sound discretion).

### VIII.

In summary, the court holds that:

1. Petitioner's first confession was obtained in violation of his *Miranda* right to the presence of counsel at his interrogation.

2. Since no counsel was provided before the second and third confessions, and the state did not carry its burden of demonstrating a waiver, if such a waiver is possible, petitioner was denied his *Miranda* right to the presence of counsel at his second and third confessions.

3. Petitioner's second and third confessions are also inadmissible as the tainted product of his inadmissible first confession.

**58.** Even if the court had not specifically guaranteed a new trial on all issues, this court would find that the guarantee of a right to appeal without further explanation would necessarily cause a layman to understand that he was entitled to a fresh start if he won all the grounds of his appeal, and that the harmless error doctrine could not be applied to defeat that expectation.

**59.** Illinois law allows a defendant to appeal nonjurisdictional constitutional claims after a stipulated bench trial. This is demonstrated by the stipulation in this case and the appellate court's willingness to review the merits of petitioner's appeal, which it did before applying the

harmless error doctrine. *See People v. Smith,* 59 Ill.2d 236, 319 N.E.2d 760 (1974) (condoning stipulated bench trial if proper admonitions given); *People v. Morris,* 6 Ill.App.3d 136, 140, 285 N.E.2d 247, 250 (1st Dist. 1974) (use of a stipulation to waive necessity of proof can be an accepted, established, and essential method of expediting criminal trials). Therefore, even apart from *Santobello,* "all would concede that the defendant would not be foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding" in this court. *Lefkowitz v. Newsome,* 420 U.S. 283, 290–91 n.7, 95 S.Ct. 886, 890, 43 L.Ed.2d 196 (1975) (dicta).

4. Petitioner's second and third confessions were obtained in violation of his sixth amendment right to counsel at a critical stage of his prosecution.

5. Petitioner did not waive the exercise of this sixth amendment right.

6. The Supreme Court's decision in *Stone v. Powell, supra,* was not intended to cover and should not be extended to cover federal habeas cases brought by state prisoners whose fifth and sixth amendment rights have been violated.

7. Admission of the three inadmissible confessions at petitioner's stipulated bench trial was not harmless error.

8. The stipulation made at the bench trial entitles petitioner to a new trial, at which the suppressed confessions will be excluded. Petitioner's stipulation with the prosecutors, made to preserve his right to appeal, will be inadmissible.

Accordingly, respondents' motion to dismiss is denied. Petitioner's motion for summary judgment is granted. The writ of habeas corpus is granted. Pursuant to Rule 23, Fed.R.App.Pro., petitioner may apply to this court for bond pending appeal of this case, or pending a retrial by the state. Any retrial must be conducted within ninety days of the entry of final judgment.