Joseph H. SZARAZ, Petitioner,

v.

E. P. PERINI, Superintendent, Marion Correctional Institution, Respondent.

Civ. A. No. C 76–255 A.

United States District Court, N. D. Ohio, E. D.

Sept. 23, 1976.

Albert S. Rakas, Dana F. Castle, Margery B. Koosed, University of Akron, Akron, Ohio, for petitioner.

William J. Brown, Atty. Gen., Columbus, Ohio, for respondent.

## ORDER

CONTIE, District Judge.

Presently pending before the Court is the application of Joseph H. Szaraz for leave to file this habeas corpus action *in forma pauperis.* Said motion is hereby granted. Upon consideration and for the reasons stated below, this action shall be dismissed.

Petitioner is incarcerated pursuant to a sentence imposed by the Common Pleas Court of Summit County, Ohio on November 12, 1973. Petitioner was found guilty by a jury of four counts of sodomy in violation of Ohio Revised Code § 2905.44, one count of rape in violation of Ohio Revised Code § 2905.01, and one count of abduction in violation of Ohio Revised Code § 2901.31. The judgment was affirmed by the Ohio Court of Appeals for the Ninth Judicial District and the Supreme Court of Ohio denied review. Petitioner's application to the Supreme Court for a Writ of Certiorari was denied.

Petitioner advances two grounds for the relief sought by this action. They are as follows:

"(a) The trial court erred in admitting evidence in violation of the Fourth Amendment which prohibits as unreasonable in purpose and scope the extensive search of an automobile parked in owner's driveway without a search warrant.

"(b) The trial court erred in admitting evidence in violation of the Due Process Clause of the Fourteenth Amendment which prohibits a one-to-one identification procedure in which the suspect is displayed in the late night hours, in handcuffs, and surrounded by police as unnecessarily suggestive and conducive to irreparable mistaken identification."

■ From the materials presented by petitioner, it appears beyond doubt that he has had the opportunity for full and fair consideration of his Fourth Amendment claim in the state courts. Thus petitioner may not now invoke said claim in this action. *Stone v. Powell,* —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

The second ground raises more complicated issues. An understanding of the basic facts of petitioner's claim is necessary to analysis herein. The decision of the Court of Appeals of Ohio reveals the following: On May 30, 1973, a young woman arrived at an Akron department store to transact certain business. Upon her return to her car in the parking lot, she was accosted by a white male with a gun. She was abducted in her own car to the back of the department store, where she was forced to enter another vehicle.

The woman was then required to disrobe and wear only her coat. She was blindfolded and compelled to sit while her abductor drove. She could see from under her blindfold; later the abductor removed the blindfold and taped her eyes. She was repeatedly sexually abused. She was returned to a church parking lot next to the department store at about 11:30 to 12:00 midnight that night.

The woman was later taken to a hospital and, upon questioning by the police, gave a detailed description of the assailant. Said description included height, weight, color of hair, reference to scars over the assailant's eyes, and tattoos. The woman's family gave the police the license number and description of a car seen leaving the parking lot just before the woman was found. The subject automobile was registered in the name of the petitioner's wife.

The woman was shown several photographs by the police while she was in the hospital. Petitioner's photograph was shown to the woman at this time; however, that photograph was old and certain significant physical characteristics of petitioner were not reflected in that photograph, i. e. the scars over his eyes and the tattoos. Also while the woman was in the hospital, the police brought a suspect in for her to identify. This confrontation was "one-to-one". She indicated that this person was not her assailant.

The police arrived at petitioner's home a few hours after the woman was found.

The police searched the car seen leaving the parking lot and found certain incriminating evidence. In the meantime, other officers entered petitioner's home. When petitioner entered the room, he was immediately placed under arrest; as one officer stated, the woman's description fit him "to a 'T'."

Thereafter, the police made arrangements with the woman to meet her at a fast food restaurant. At around 2:30 or 3:00 a. m. the morning after the abduction, the petitioner was shown to the woman. Petitioner was handcuffed at the time, and the light of the police cars was shining on him. Petitioner was the only suspect shown to the woman at this time and he was positively identified. Petitioner was again identified by the woman at trial, and, as stated by the Court of Appeals, the in-court identification was of independent origin and free of taint.

The state courts found that this identification procedure was not violative of petitioner's Fourteenth Amendment rights and, in the alternative, that any error was harmless beyond a reasonable doubt.

It is clear that petitioner has had a full and fair opportunity to present this claim to the state courts. Upon first glance, this fact would seem to call for the application of *Stone v. Powell, supra.* However, closer analysis has convinced the Court that *Stone v. Powell* does not preclude consideration of this issue in this proceeding.

The most obvious distinction is that *Stone* dealt with the Fourth Amendment, while petitioner raised his rights under the Fourteenth Amendment. Such a distinction, however, need not be determinative if the same principles are applicable.

There are substantial differences between the purposes of the subject rules. The Fourth Amendment exclusionary rule was adopted primarily for its deterrent effect. *Stone v. Powell, supra.* The show-up cases are concerned, generally, with a more

fundamental issue: the reliability of the identification. See *Brathwaite v. Manson,* 527 F.2d 363 (2nd Cir. 1975). In identification cases, this concern for reliability precludes application of the balancing approach adopted by the Supreme Court in *Stone.* However, to the extent petitioner argues that a *per se* exclusionary rule predicated upon considerations of deterrence should be adopted, *Stone's* principles become very applicable.

The Court accepts petitioner's suggestion that the one-to-one show-up was suggestive. For the purpose of this opinion, the Court shall also assume that the procedure adopted was unnecessarily suggestive. Cf. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *United States v. Scott,* 518 F.2d 261 (6th Cir. 1975). The first issue thus becomes whether under the totality of the circumstances, there is a substantial likelihood of misidentification. See *Neil v. Biggers, supra.*

The record establishes that the victim had an adequate opportunity to view her abductor and to form a mental image of his appearance. She later gave a thorough and complete description of him to the police; needless to say, the description of the man's height, weight, and hair color, as well as references to the vertical scars over his eyes, and tattoos was sufficient both to evidence this firm mental image and to make her assailant rather unique in appearance. The fact that petitioner fits this description perfectly and happened to be married to the titled owner of an automobile seen driving away from the area very shortly before the victim was found, makes the victim's identification very reliable indeed.

Yet there is more. The victim told the police that the first suspect brought to her was not her assailant. The subject identification occurred within hours of the crimes, while the victim's memory was still fresh.[1]

---

1. The victim's failure to recognize petitioner *from a photograph not reflecting the distinctive physical characteristics mentioned above* can-

not reasonably be said to cast doubt on the *reliability of her subsequent identification.*

The victim's identification of petitioner was unequivocal both at the one-to-one show-up and at trial. Cf. *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

The Court concludes that there is practically no likelihood of misidentification in this case. Thus, the conviction is not constitutionally infirm unless the Fourteenth Amendment requires a *per se* exclusionary rule on grounds other than reliability.

In *Brathwaite v. Manson, supra,* the Second Circuit adopted such an interpretation. The Court held that *Neil v. Biggers, supra,* qualified *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), only as to pre-*Stovall* cases. Other cases expressly or impliedly adopting such an interpretation are listed in *Brathwaite* at 319. The asserted rationale for such a rule is deterrence of the police.

As *Brathwaite* and similar cases were decided prior to *Stone v. Powell, supra,* their holdings must be measured against the standard enunciated therein. This Court is of the opinion that the Supreme Court's balancing approach in that case is applicable herein, and that the majority's holding precludes implementation of a deterrence-based rule in the circumstances of this case.

Accordingly, the instant action is hereby dismissed.

IT IS SO ORDERED.