**Eutues WHITE, Petitioner-Appellant,**

v.

**Fred FINKBEINER,
Respondent-Appellee.**

No. 79–1563.

United States Court of Appeals,
Seventh Circuit.

March 26, 1982.

Before SWYGERT, Senior Circuit Judge, and SPRECHER and WOOD, Circuit Judges.

SWYGERT, Senior Circuit Judge.

Pursuant to an order of the Supreme Court,[1] this case is before us for the third time. The first time we considered this case we reversed the district court's denial of petitioner-appellant Eutues White's application for a writ of habeas corpus and remanded for an evidentiary hearing.[2] On remand, the district court again denied habeas relief, finding that White had not requested to have counsel present during a custodial interrogation. Consequently, the district court held that the confession which White made during the interrogation was admissible under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In an appeal from that judgment, we affirmed. However, we rejected the district court's determination that White had not requested counsel. Instead, we held that although White had made such a request, he had validly waived his right to counsel afterward.[3]

In its remand order, the Supreme Court directed us to reconsider our decision in *White II* in the light of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Additionally, although we found it unnecessary to do so previously,[4] we now must consider respondent-appellee Finkbeiner's contention that we should extend the rationale of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), to bar White from obtaining federal habeas relief on the basis of a *Miranda* claim which

White had a full and fair opportunity to litigate in the state court proceedings.[5]

After considering the parties' statements submitted to this court pursuant to Circuit Rule 19, for the reasons given below, we reverse the district court's judgment and remand with instructions to issue the writ and order White's release unless he is retried within ninety days of the issuance of this court's mandate.[6]

I.

*Edwards* completely undermines our holding in *White II* and behooves us to reverse the district court's judgment. In *Edwards*, after being given *Miranda* warnings, which he acknowledged that he understood, the defendant stated that he was willing to be questioned. Having been told that another suspect had implicated him in the crime, Edwards denied any involvement in the crime, gave an alibi, and tried to negotiate a deal. The interrogating officer told Edwards that he wanted a statement and that he had no authority to make a deal. Thereafter, Edwards telephoned an attorney but hung up after a few moments. Edwards then told the officer that he wanted an attorney before making a deal.[7] "At that point, questioning ceased and Edwards was taken to county jail." 451 U.S. at 479, 101 S.Ct. at 1882. The next morning two detectives called on Edwards at the county jail. Although he said that he did not want to talk to the detectives, Edwards was told that he must. After being given additional *Miranda* warnings and listening to part of a

---

1. *White v. Finkbeiner*, 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981).

2. *White v. Finkbeiner*, 570 F.2d 194 (7th Cir. 1978) ("*White I*").

3. *White v. Finkbeiner*, 611 F.2d 186 (7th Cir. 1979) ("*White II*").

4. 611 F.2d at 189 n.9; 570 F.2d at 200–01.

5. Not only did White have an opportunity to litigate his *Miranda* claim in the state court proceedings, in fact, he fully utilized that opportunity, as set forth in our previous opinions. 611 F.2d at 196–99; 570 F.2d at 188. Thus, as

required by 28 U.S.C. § 2254(b), White has exhausted the available state court remedies.

6. In the current posture of this case, it is unnecessary to include either a fuller recitation of its procedural history or a statement of its facts, our previous opinions being adequate regarding these matters.

7. The Arizona Supreme Court found that, although the question was arguable, Edwards' statement constituted, *inter alia*, a request for counsel. 451 U.S. at 480 n.6, 101 S.Ct. at 1882 n.6. The Court uncritically accepted this determination. 451 U.S. at 482, 101 S.Ct. at 1883.

tape recording of an alleged accomplice's statement, Edwards confessed. *Id.*

The Supreme Court determined that Edwards' confession, given during the second custodial interrogation, was inadmissible. Specifically, the Court stated:

[w]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.

451 U.S. at 484–85, 101 S.Ct. at 1884–1885 (footnote omitted). Under this test Edwards' confession was deemed inadmissible because, after invoking his *Miranda* right to counsel, Edwards was subjected to additional interrogation which he did not initiate, without counsel having been made available to him. 451 U.S. at 486–87, 101 S.Ct. at 1885–1886.

The facts of this case are almost identical to those of *Edwards*. In *White II* we found that, although not clear and unequivocal, White's statement during an initial interrogation: "I'd rather see an attorney," constituted a request for counsel under *Miranda.* 611 F.2d at 189–90.[8] Under *Edwards*, after requesting counsel during the initial interrogation, White should not have been subjected two days later to interrogation which he did not initiate and before which counsel had not been made available to him.[9] Consequently, when White confessed during the second interrogation he had not validly waived his *Miran-*

---

**8.** This determination was inconsistent with the district court's finding on remand, *see* 611 F.2d 189 90, but was consistent with the conclusion of the Illinois Supreme Court. *See* 611 F.2d at 188 n.8.

**9.** In *White II* we stated that the prosecution still may demonstrate a waiver even where, after a request for counsel, the police initiate further contact with an accused without counsel having been made available to him. 611 F.2d at 192. This clearly conflicts with the holding in *Edwards* reproduced in the text. In our previous opinion we also relied in part upon the fact that the officers who conducted the second interrogation did not know of White's previous request for counsel. 611 F.2d at 192–93. In *Edwards* the second interrogation also was conducted by detectives other than those who conducted Edwards' initial interrogation. However, the Court did not indicate in its opinion whether the second interrogators knew of Edwards' previous request for counsel. 451 U.S. at 479, 101 S.Ct. at 1882. Thus, it apparently did not matter in *Edwards* whether or not the second interrogators knew of the defendant's previous request for counsel. Consequently, we believe that it would be inconsistent with *Edwards* to find White's confession admissible because the second interrogators were not informed of his request for counsel. To so hold would be tantamount to creating a "good faith" exception to the *Edwards* rule, which restricts interrogation after a suspect's request for counsel, and might permit relatively easy circumvention of that rule. If

the Supreme Court had desired to formulate such a rule, it could have so indicated in *Edwards* itself. Without additional support in the Court's opinion, we are reluctant to interpret *Edwards* as incorporating a "good faith" exception.

The *Edwards* opinion, 451 U.S. at 486 n.9, 101 S.Ct. at 1885 n.9, also cites with apparent approval two Fifth Circuit decisions, *Nash v. Estelle*, 597 F.2d 513 (5th Cir.) (*en banc*), *cert. denied*, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979), and *Thompson v. Wainwright*, 601 F.2d 768 (5th Cir. 1979), which may impact upon our disposition of this case. According to *Nash*, 597 F.2d at 517, and *Thompson*, 601 F.2d at 772, where, as in both this case and *Edwards*, during a custodial interrogation a suspect makes an equivocal or unclear request for counsel, further questioning is permitted to clarify the suspect's request. (In *United States v. Nielson*, 392 F.2d 849 (7th Cir. 1968), this court required that such an inquiry be conducted.) Whether a clarifying inquiry would have been permissible (or required) after White made his equivocal request for counsel, the additional interrogation conducted in this case was not designed to clarify White's request but to elicit a confession. Thus, the additional interrogation was impermissible even under *Nash* and *Thompson*. We have no occasion to consider whether additional questioning merely to clarify White's request would have been permissible under *Edwards*.

*da* rights. Nor did his confession itself constitute a valid waiver. Thus, White's confession was inadmissible.

## II.

■ As stated above, in two previous appeals in this case we did not have to decide, as respondent Finkbeiner urged us to do, whether to extend the rationale of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), to bar habeas relief on the basis of a *Miranda* claim. *See* note 4, *supra* and accompanying text. However, our conclusion that White is entitled to habeas relief under *Edwards* compels us to resolve that question now. For reasons discussed more fully below, we decline to extend *Stone*.

The holding of *Stone* is deceptively simple:

> [W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

428 U.S. at 494, 96 S.Ct. at 3052 (footnotes omitted).[10] However, the basis and perimeter of *Stone* remain obscure and ambiguous.

*See Stone*, 428 U.S. at 503–06, 96 S.Ct. at 3056–3058 (Brennan, J., dissenting); *United States ex rel. Sanders v. Rowe*, 460 F.Supp. 1128 at 1141–42.[11]

Some insight may be gained by looking backward at the concurring opinion of Justice Powell, the author of *Stone*, in *Schneckloth v. Bustamonte*, 412 U.S. 218, 250–75, 93 S.Ct. 2041, 2059–2072, 36 L.Ed.2d 854 (1973) (Powell, J., concurring), and by examining *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), decided three years after *Stone*, in which, in its only decision explicitly resolving an argument to extend *Stone* beyond the Fourth Amendment,[12] the Court held that *Stone* did not bar a habeas petitioner's claim of racial discrimination in the selection of members of the grand jury by which he was indicted.[13] In his *Schneckloth* concurrence, Justice Powell examined the history and purpose of the writ of habeas corpus. 412 U.S. at 252–56, 93 S.Ct. at 2060–2062. Based on this examination, he severely criticized the "extension" of the writ to permit habeas petitioners to raise constitutional claims having no bearing on their guilt or innocence. 412 U.S. at 256–58, 93 S.Ct. at 2062–2063. Thus, in *Schneckloth* Justice Powell seemingly embraced the thesis of Judge

10. Thus, on its face the holding in *Stone* applies only to claims based upon *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

11. The reasons underlying the Court's holding as well as its meaning are matters which have engendered a plethora of scholarly debate. *E.g.*, Halpern, *Federal Habeas Corpus and the Mapp Exclusionary Rule After Stone v. Powell*, 1982 Colum.L.Rev. —— (publication forthcoming); Comment, *Development of Federal Habeas Corpus Since Stone v. Powell*, 1979 Wis.L. Rev. 1145 (hereinafter cited as "Comment, *Development of Federal Habeas Corpus*"); *See Also United States ex rel. Sanders v. Rowe*, 460 F.Supp. 1128, 1142 n.37 (N.D.Ill.1978) (Bua, J.) (collecting commentaries on *Stone*).

12. The Fifth Circuit declined to extend *Stone* to a double jeopardy claim in *Greene v. Massey*, 546 F.2d 51, 53 n.6 (5th Cir. 1977). In the Supreme Court, the respondents again contended that *Stone* should be so extended. *See United States ex rel. Sanders v. Rowe*, 460 F.Supp. at 1143. However, in reversing the Fifth Circuit the Supreme Court did not even mention the respondent's argument based on *Stone.*

*Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

13. Predictably, *Rose* also has garnered considerable attention from legal scholars pursuing the meaning of *Stone*. *E.g.* Dukes, *Rose v. Mitchell and Justice Lewis Powell: The Role of Federal Courts and Federal Habeas*, 23 How. L.J. 279 (1980); Note, *The Supreme Court, 1978 Term*, 93 Harv.L.Rev. 60, 199–209 (1979).

There is some debate whether Part IIB of the opinion of the Court in *Rose*, which resolves the question whether *Stone* should be extended, constitutes part of the Court's holding. *See Rose*, 443 U.S. at 582 n.3, 99 S.Ct. at 3014 n.3 (Powell, J., concurring in judgment). However, dissenting Justices White and Stevens also joined this part of the Court's opinion. 443 U.S. at 588, 99 S.Ct. at 3017. Thus, including Justices Brennan and Marshall, both of whom joined the entire opinion of the Court, a majority of the Court agreed in *Rose* that *Stone* should not be extended. *See The Supreme Court, supra*, at 199 n.8.

Henry Friendly in his seminal article *Is Innocence Relevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142 (1970) (arguing that only claims related to guilt or innocence should be cognizable on federal habeas corpus) (*cited in Schneckloth*, 412 U.S. at 258 n.12, 93 S.Ct. at 2063 n.12). By comparison, *Stone* seems to sweep less broadly. *See Stone*, 428 U.S. at 494 n.37, 96 S.Ct. at 3052 n.37 (*Stone* not concerned with the scope of the federal habeas statute as a vehicle for litigating constitutional claims generally). *Rose* reinforces our view that, whatever its reach, *Stone* does not incorporate the broad-based curtailment of federal habeas jurisdiction contemplated by Justice Powell's concurrence in *Schneckloth*. Indeed, in arguing that habeas litigation of the racial discrimination claim at issue in *Rose* should be barred because the asserted claim was unrelated to the fairness of the petitioner's trial, Justice Powell relied more on his concurrence in *Schneckloth* than on his opinion of the Court in *Stone*. *See Rose*, 443 U.S. at 579–88, 99 S.Ct. at 3012–3017 (Powell, J., concurring in judgment).

Because of, or perhaps despite, the cryptic nature of *Stone*, virtually uniformly lower courts either have refused to, or have stated in dicta that they would not, extend *Stone* beyond Fourth Amendment claims.[14] We are not bound by any of these decisions, but they strongly suggest the result we should, and do, reach in this case.

### A.

First, there is a jurisprudential reason underlying our refusal to extend *Stone* to *Miranda* claims.[15] We doubt whether we

14. Prior to *Rose*, one district court, in dicta, did state that *Stone* should be applied to *Miranda* claims. *Richardson v. Stone*, 421 F.Supp. 577 (N.D.Cal.1976). However, after *Rose* both the Ninth Circuit and another district court in California independently rejected the *Richardson* court's conclusion. *Patterson v. Warden, San Louis Obispo*, 624 F.2d 69 (9th Cir. 1980) (per curiam); *Berg v. Morris*, 483 F.Supp. 179, 184 n.3 (E.D.Cal.1980). In *White I*, we stated in dicta that a "forceful argument" can be made for extending *Stone* to *Miranda* claims. 570 F.2d at 200 n.2. However, prior to that, this court also had indicated in dicta that it would not so extend *Stone*. *United States ex rel. Henne v. Fike*, 563 F.2d 809, 812 (7th Cir. 1977) (per curiam), *cert. denied*, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776 (1978). Many other courts, either in holdings or dicta, are in accord with *Henne*, while no other court is in accord with *Richardson*. *See Harryman v. Estelle*, 616 F.2d 870, 872 n.3 (5th Cir.) (en banc), *cert. denied*, 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980) (extension argument made for first time on appeal); *Wilson v. Henderson*, 584 F.2d 1185, 1189 (2d Cir. 1978) (dicta), *cert. denied*, 442 U.S. 945, 99 S.Ct. 2892, 61 L.Ed.2d 316 (1979) ("The holding in *Stone* was expressly grounded upon Fourth Amendment search and seizure issues and the exclusionary rule."); *Smith v. Wainwright*, 581 F.2d 1149, 1151 (5th Cir. 1978) (dicta); *Cannistraci v. Smith*, 470 F.Supp. 586, 590 (S.D.N.Y.1979) (dicta) (*Stone* rationale only applicable to search and seizure issues); *United States ex rel. Sanders v. Rowe*, note 11, *supra*.

Lower courts also have declined to extend *Stone* to claims other than *Miranda* claims. *See Morgan v. Hall*, 569 F.2d 1161, 1168–69 (1st Cir.), *cert. denied*, 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1142 (1978) (claim that prosecutor commented on defendant's silence in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Moore v. Cowan*, 560 F.2d 1298, 1301 (6th Cir. 1977), *cert. denied*, 435 U.S. 929, 98 S.Ct. 1500, 55 L.Ed.2d 525 (1978) ("comment on silence" claim considered despite failure to raise at trial and in district court but found to be harmless error); *Greene v. Massey*, note 12, *supra* (double jeopardy claim); *United States ex rel. Burton v. Cuyler*, 439 F.Supp. 1173, 1182 n.14 (E.D.Pa. 1977), *aff'd mem.*, 582 F.2d 1278 (3d Cir. 1978) (dicta) (denial of right to counsel at line-up); *Szaraz v. Perini*, 422 F.Supp. 8, 10 (N.D.Ohio 1976) (suggestive identification claim). *See Also Swicegood v. Alabama*, 577 F.2d 1322, 1325 (5th Cir. 1978) (*Stone* applicable where fruit of illegal arrest is line-up identification but does not bar challenge to line-up procedures themselves) (*discussed in* Comment, *Development of Federal Habeas Corpus, supra*, note 11, at 1174).

15. Concurring in *Brewer v. Williams*, 430 U.S. 387, 414, 97 S.Ct. 1232, 1247, 51 L.Ed.2d 424 (1977), Justice Powell remarked that the "applicability of *Stone* in the Fifth and Sixth Amendment contexts raises a number of unresolved issues." He noted that Fifth Amendment claims often involve challenges to the fairness of the trial or the integrity of the fact-finding process and cautioned that the question whether *Stone* should be so extended should be resolved only after a full exploration of the implications of such a ruling. The Supreme Court has not yet explored the implications of extending *Stone* to *Miranda* claims. As stated in the text, we believe that the Court itself

have the power to do so, believing that such an extension of *Stone* may be a matter for the Supreme Court. In *Wainwright v. Sykes*, 433 U.S. 72, 87 n.11, 97 S.Ct. 2497, 2506 n.11, 53 L.Ed.2d 594 (1977), the Court acknowledged the question whether *Stone* applies to *Miranda* claims. However, the *Wainwright* Court determined that the rule of *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), should govern the cognizability of a *Miranda* claim in a federal habeas proceeding. Thus, the Court held that federal habeas review of a *Miranda* claim is unavailable where there has been a state procedural waiver, absent a showing of "cause" and "prejudice." 433 U.S. at 87, 97 S.Ct. at 2506.

*Wainwright v. Sykes* necessarily permits habeas litigation of a *Miranda* claim, such as the one at issue here, which was litigated in state court, *see* note 5, *supra*, because such litigation clearly is permissible under *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), which was cited in *Wainwright* without its continued viability being questioned. 433 U.S. at 87, 97 S.Ct. at 2506. *Brown* permitted habeas litigation of claims which were raised in state court. However, *Stone* forecloses habeas litigation not only of claims which were not litigated in state court (and, therefore, procedurally waived in most cases), but almost invariably bars claims which were so litigated as well. *See* Comment, *Development of Federal Habeas Corpus, supra* note 11, at 1153–67. Thus, to extend *Stone* to *Miranda* claims by implication would overrule *Wainwright* and *Brown v. Allen*.[16] Clearly, even if we were

so inclined, we have no authority implicitly to overrule or limit these Supreme Court decisions. Thus, to the extent that an extension of *Stone* would be inconsistent with *Wainwright* and *Brown*, it would be beyond our power to extend *Stone*.

Prudence also dictates that we leave an extension of *Stone* to *Miranda* claims to the Court. As Justice Marshall noted in *Mincey v. Arizona*, 437 U.S. 385, 402–05, 98 S.Ct. 2408, 2418–2420, 57 L.Ed.2d 290 (1978) (Marshall, J., concurring), *Stone* places an additional responsibility upon the Court on direct review of cases raising Fourth Amendment claims by making direct review by the Court virtually the only vehicle for federal court examination of such claims. Of course, the Court cannot review as many such claims as were subject to federal court scrutiny when federal habeas review was available for them. At the same time, because their Fourth Amendment decisions are less likely to be subject to review in the federal courts, state courts may be less likely to follow the Fourth Amendment decisions of their respective circuits, causing increasing inconsistencies to develop in the "Fourth Amendment law." · The Supreme Court eventually must harmonize the inconsistencies which do arise by granting *certiorari* in more cases raising Fourth Amendment claims on direct review. Alternatively, we simply must live with increasingly diverse "Fourth Amendment law." Whether to place such additional pressure on the Court or to accept such diversity in the "Fifth Amendment law" are matters which the Supreme Court itself should resolve.[17]

should decide initially whether to so extend *Stone*. However, we note that the *Miranda* claim at issue here does not involve merely a "technical" violation of *Miranda*, such as the failure to give complete warnings at issue in *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). Rather, the *Miranda* violation which occurred in this case denied White the most crucial protection recognized in *Miranda*—the right to have counsel present during a custodial interrogation. *See Miranda*, 384 U.S. at 469–71, 86 S.Ct. at 1625–1626.

**16.** Indeed, it has been argued that *Stone* itself retreated from *Brown v. Allen* and reinstated the regime of *Frank v. Mangum*, 237 U.S. 309,

35 S.Ct. 582, 59 L.Ed. 969 (1915), with respect to Fourth Amendment claims, but that *Rose v. Mitchell* indicates the Court's unwillingness to resurrect the *Frank* rule for all claims. In this view, *Rose* effectively overrules much of *Stone* and reaffirms *Brown*. *See* Note, *The Scope of Federal Habeas Corpus Review: Rose v. Mitchell*, 21 B.C.L.Rev. 948, 958, 968 (1980).

**17.** For an interesting and illuminating discussion of the interplay between state and federal courts and the role of federal habeas corpus jurisdiction, *see* Cover & Aleinikoff, *Dialectical Federalism: Habeas Corpus and the Court*, 86 Yale L.J. 1035 (1977).

## B.

Even assuming that we may extend *Stone* to *Miranda* claims, there are additional reasons for refusing to so extend *Stone* here. The *Stone* Court primarily employed a utilitarian analysis to determine that Fourth Amendment claims should not be cognizable in federal habeas corpus proceedings. 428 U.S. at 489, 96 S.Ct. at 3050. It balanced the costs of applying the Fourth Amendment in such proceedings against the benefits of such an application and found that the former outweighed the latter. Having already stated that the Fourth Amendment exclusionary rule is not a personal constitutional right but a "judicially created means of effectuating the rights secured by the Fourth Amendment," *Stone*, 428 U.S. at 482, 486, 96 S.Ct. at 3046–3048, the Court held that the Fourth Amendment exclusionary rule need not be applied in federal habeas proceedings. 428 U.S. at 489–94, 96 S.Ct. at 3050–3052; *see generally* Comment, *Development of Federal Habeas Corpus, supra* note 11, at 1150–53.[18]

The utilitarian analysis utilized by the *Stone* Court logically may not be limited to the *Mapp* exclusionary rule. *United States ex rel. Sanders*, 460 F.Supp. at 1142. Indeed, in other contexts the Court has utilized such an analysis to determine the applicability of *Miranda*. *E.g., Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) (prosecution use of testimony of witness whose identity was made known to police in defendant's pre-*Miranda* custodial interrogation at trial to which *Miranda* applied).[19] Thus, partially because of the limited deterrence which would result

**18.** We intuitively believe that *Stone* resulted primarily from the dissatisfaction of a majority of the Court with the *Mapp* rule. *See Stone*, 428 U.S. at 496–502, 96 S.Ct. at 3053–3056 (Burger, C. J., concurring); *id.* at 536–42, 96 S.Ct. at 3072 -3074 (White, J., dissenting). Foreclosing the application of that rule on habeas corpus was one way to limit it without overruling *Mapp* itself, the votes for which apparently have not been forthcoming. *See United States ex rel. Sanders*, 460 F.Supp. at 1143. Of the justices on the Court who have commented upon the question, however, only the Chief Justice has expressly urged extending *Stone* to *Miranda* claims. *Brewer v. Williams*, 430 U.S. at 426–27, 97 S.Ct. at 1253–1254 (Burger, C. J., dissenting). As discussed in note 15, *supra*, Justice Powell has recognized that such an extension raises unresolved issues which require the Court's close examination. *Brewer v. Williams*, 430 U.S. at 414, 97 S.Ct. at 1247 (Powell, J., concurring). Moreover, the Court simply has not been as hostile to *Miranda* as it has been to *Mapp*. *E.g., Edwards*, (unanimous decision that defendant's confession was obtained in violation of *Miranda* ). In fact, the Court recently extended *Miranda*. *See Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (Burger, C. J.) (applying *Miranda* to in-custody, court-ordered psychiatric examination).

Among others, Justice Brennan has questioned the legal basis for the Court's application of a utilitarian analysis to determine the availability of the exclusionary rule:

[T]he Court has undertaken to strike a 'balance' between the 'policies' it finds in the Bill of Rights and the 'competing interes[t]' in accurate trial determinations. This balancing effort is completely freewheeling. Far

from applying criteria intrinsic to the Fourth and Fifth Amendments, the Court resolves succeeding cases simply by declaring that so much exclusion is enough to deter police misconduct. That hardly conforms to the disciplined analytical method described as 'legal reasoning' through which judges endeavor to formulate or derive principles of decision that can be applied consistently and predictably.

... [B]y treating Fourth and Fifth Amendment privileges as mere incentive schemes, the Court denigrates their unique status as *constitutional* protections.

*United States v. Havens*, 446 U.S. 620, 633–34, 100 S.Ct. 1912, 1919–1920, 64 L.Ed.2d 559 (1981) (Brennan, J., dissenting) (citations omitted) (emphasis in original); *see also Stone*, 428 U.S. at 510–15, 96 S.Ct. at 3060–3062 (Brennan, J., dissenting). Legal scholars have joined the debate. Compare Monaghan, *The Supreme Court, 1974 Term—Foreword: Constitutional Common Law*, 89 Harv.L.Rev. 1 (1975), *with* Schrock & Welsh, *Reconsidering the Constitutional Common Law*, 91 Harv.L.Rev. 1117 (1978). We will not resolve the difficult questions raised by the application of a utilitarian analysis to determine the availability of the exclusionary rule.

**19.** In *Michigan v. Tucker* the Court found that reliability was not at issue both because the suspect had not incriminated himself and because the witness to whom the suspect's statements lead the police was subject to cross-examination at trial. 417 U.S. at 449, 94 S.Ct. at 2366. Unlike the present case, the statement of the accused himself was suppressed in *Tucker*, 417 U.S. at 437, 94 S.Ct. at 2360.

from a contrary rule, the Court has permitted the impeachment of a defendant who testifies in his own behalf with statements otherwise inadmissible under *Miranda*. *E.g., Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Against this background, we may assume that a decision whether to extend *Stone* to *Miranda* claims should be informed by a utilitarian analysis. Applying such an analysis, however, we find that the appreciable differences between the *Miranda* and *Mapp* rules support our conclusion that an extension of *Stone* to *Miranda* claims would be unwarranted. *Compare United States ex rel. Sanders,* note 11, *supra*; Halpern, note 11, *supra* (suggesting that *Stone* should not be extended to *Miranda* claims), *with* Comment, *Development of Federal Habeas Corpus, supra* note 11, at 1174.[20]

First, the rights secured by the Fourth Amendment protection against unreasonable searches and seizures are not inextricably linked to the fairness and accuracy of the criminal process, as is the Fifth Amendment privilege against self-incrimination. *United States ex rel. Sanders,* 460 F.Supp. at 1145. As viewed by the Court in *Stone,* the Fourth Amendment "was intended to protect the 'sanctity of a man's home and the privacies of life,' *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886) from searches under unchecked general authority." *Stone,* 428 U.S. at 482, 96 S.Ct. at 3046 (footnote omitted). Although they frequently are implicated in the criminal process, Fourth Amendment privacy values may just as frequently be implicated where criminal proceedings are neither likely nor contemplated. Thus, be-

cause the primary justification of the *Mapp* rule is "the deterrence of police conduct that violates Fourth Amendment rights," 428 U.S. at 486, 96 S.Ct. at 3048, it has been criticized because "[i]t provides no recompense for the innocent and it frees the guilty." *Schneckloth,* 412 U.S. at 268 n.26, 93 S.Ct. 2068 n.26 (Powell, J., concurring) (*quoting* Oaks, *Studying the Exclusionary Rule in Search and Seizure,* 37 U.Chi.L.Rev. 665, 755 (1970)).

By comparison, *Miranda* includes two prophylactic rules: a procedural safeguard, in the form of required warnings, to effectuate the Fifth Amendment privilege against self-incrimination; and an exclusionary remedy to enforce the warning requirement. *See Miranda,* 384 U.S. at 444, 479, 86 S.Ct. at 1612, 1630. The necessary predicate of *Miranda* is the Court's determination that the privilege against self-incrimination applies during a custodial police interrogation. 384 U.S. at 461, 86 S.Ct. at 1620–1621. The Fifth Amendment privilege, like the prohibition against the use of involuntary confessions, reinforces the "underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system—a system in which the state must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against the accused out of his own mouth." *Rogers v. Richmond,* 365 U.S. 534, 541, 81 S.Ct. 735, 739, 5 L.Ed.2d 760 (1961). Consequently, unlike the *Mapp* rule, which, according to *Stone,* was designed only to deter police conduct in order to foster values which may, or may not, be implicated in the criminal process, *Miranda* secures rights

**20.** *Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), may stand for the broad, but unremarkable, proposition that claims which are materially different from Fourth Amendment claims are not barred by *Stone.* The *Rose* Court noted that in *Stone* the Court stressed the narrowness of its decision. "Mindful of [the] limited reach of *Stone* . . ." 443 U.S. at 560, 99 S.Ct. at 3002, the Court proceeded to consider the differences between the racial discrimination claim there at issue and the Fourth Amendment claim presented in *Stone.* Of course, many of the differences not-

ed in *Rose* between Fourth Amendment and racial discrimination claims, 443 U.S. at 561–64, 99 S.Ct. at 3003–3004, are not present with respect to *Miranda* claims. However, we do not read *Rose* so narrowly as to require the application of *Stone* to all claims which do not differ from Fourth Amendment claims in the same manner as racial discrimination claims. *But see The Supreme Court, supra* note 13, at 204 (suggesting that after *Rose* only claims impugning the fairness of state trial or corrective procedures should be cognizable on federal habeas corpus).

which are inextricably linked to the American theory of criminal law, that, in a sense, are its heart. Also unlike the *Mapp* rule, the *Miranda* rules were not intended solely to deter egregious police behavior, but to protect a criminal suspect's exercise of the privilege which is one of the distinctive components of our criminal law. *Cf. Estelle v. Smith,* 451 U.S. 454, 466–67, 101 S.Ct. 1866, 1875, 68 L.Ed.2d 359 (1981); *Fare v. Michael C.,* 442 U.S. 707, 719–20, 99 S.Ct. 2560, 2568–2569, 61 L.Ed.2d 197 (1979); *United States ex rel. Riley v. Franzen,* 653 F.2d 1153, 1158–61 (7th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 617, 70 L.Ed.2d 602 (1981) (primary purpose of *Miranda* is to protect suspect's exercise of Fifth Amendment privilege against self-incrimination).

In this sense, the racial discrimination claim at issue in *Rose v. Mitchell,* note 20, *supra,* to which the Court refused to extend *Stone,* is more like a *Miranda* claim than it is like a Fourth Amendment claim. As the *Rose* Court recognized, "[d]iscrimination on the basis of race ... is especially pernicious in the administration of justice." The *Rose* Court also noted that the exclusion of individuals from a grand jury on the basis of race "strikes at the fundamental values of our judicial system ...." *Rose,* 443 U.S. at 555–56, 99 S.Ct. at 2999–3000.

Second, the holding in *Stone* almost entirely eliminated litigation of Fourth Amendment claims in federal habeas proceedings. The *Stone* Court believed that this elimination was beneficial in at least two respects. 428 U.S. at 491 n.31, 96 S.Ct. at 3051 n.31. It avoided one potential source of friction between state and federal courts. It also reduced the workload of the

federal judiciary by precluding litigation of a ubiquitous claim on federal habeas corpus. *See Schneckloth,* 412 U.S. at 260–61, 263–65, 93 S.Ct. at 2064–2065, 2066–2067 (Powell, J., concurring).[21]

Neither of these objectives would be accomplished by extending *Stone* to *Miranda* claims. Most likely, stripped of his ability to raise a *Miranda* claim, a habeas petitioner would challenge his confession as having been made involuntarily. This would compel federal habeas courts to return to the case-by-case "totality-of-the-circumstances" test which, to a great extent, *Miranda* replaced. Thus, because application of the "old" test is more uncertain, friction resulting from differing decisions by state and federal courts, at times between a state supreme court and a federal trial court, would not be reduced significantly by extending *Stone* to *Miranda* claims. Moreover, application of the "totality" test likely would require the expenditure of more federal judicial resources than application of the comparatively perspicuous *Miranda* rules.

Finally, another consideration in *Stone* was the Court's belief that evidence seized in violation of the Fourth Amendment uniformly is reliable. According to this view, application of *Mapp* typically yields only a windfall for the guilty. *Stone,* 428 U.S. at 490–491, 96 S.Ct. at 3050–3051 n.31; *see also Brewer v. Williams,* 430 U.S. at 413 n.2, 97 S.Ct. at 1247 n.2 (Powell, J., concurring); *Schneckloth,* 412 U.S. at 258 (Powell, J., concurring); *but see* Comment, *Development of Federal Habeas Corpus, supra* note 11, at 1171 n.174 (discussing applicability of *Stone* where fruit of unlawful arrest is line-up identification).[22] Even if this con-

---

**21.** Unlike *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), *Miranda* had several beneficial effects. It provided police with concrete guidelines, promoting self-regulation and reasonably ensuring the admissibility of confessions when its dictates are followed. *Miranda* also gave lower courts easily applicable rules and obviated in many instances the case-by-case analysis previously utilized to resolve challenges to confessions. No such benefits accompanied *Mapp,* which contained only a remedial component and did nothing to clarify

the general prohibition against unreasonable searches and seizures.

**22.** In light of *Rose,* which permitted habeas litigation of a non-guilt-related claim, it would appear that *Stone* does not bar every claim which may be characterized as non-guilt, or non-reliability-related. *But see Rose,* 443 U.S. at 587 n.10, 99 S.Ct. at 3016 n.10 (Powell, J., concurring in judgment); *The Supreme Court, supra* note 13, at 203–05. Thus, this putative basis of *Stone* may no longer require our con-

sideration is still viable, *see* note 22, *supra*, *Miranda* claims cannot fairly be characterized as entirely non-guilt-related. In *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772 (1966), in deciding not to apply *Miranda* retroactively and although acknowledging that it was overinclusive, the Court observed: "[*Miranda* guards] against the possibility of unreliable statements in every instance of in-custody interrogation .... [I]t provide[s] important new safeguards against the use of unreliable statements at trial." 384 U.S. at 730, 86 S.Ct. at 1779. *See Also United States v. Whitson*, 587 F.2d 948, 951 n.5 (9th Cir. 1978). In this regard, *Miranda* may be viewed as creating a *per se* rule regarding the voluntariness of confessions: unless the *Miranda* requirements have been satisfied a confession cannot be said to be voluntary under the "totality-of-the-circumstances" test. *See Miranda*, 384 U.S. at 458, 86 S.Ct. at 1619. Although the requirement that a confession be voluntary in order to be admissible does not rest solely on concern for reliability, neither is the reliability of a confession wholly divorced from its voluntariness. *Rogers v. Richmond*, 365 U.S. at 541, 81 S.Ct. at 739–740; *see also Michigan v. Tucker*, 417 U.S. at 448 n.23, 94 S.Ct. at 2366 n.23.

For these reasons, we conclude that White was not barred by the rationale of *Stone v. Powell* from obtaining federal habeas relief on the ground that his confession was inadmissible under *Miranda*.

### III.

Having concluded that White's confession was inadmissible and that the rationale of *Stone v. Powell* does not preclude granting habeas relief in this case, we reverse the judgment of the district court and remand with instructions to grant the writ and order White's release within ninety days of the issuance of this court's mandate, unless White is retried within that period.

REVERSED AND REMANDED.

HARLINGTON WOOD, Jr., Circuit Judge, concurring.

In *White II*, I agreed with District Judge Morgan in construing the defendant's brief conversation with a police official not to be a request for counsel, although it was a close determination. The Supreme Court of Illinois, however, had found otherwise.[1] Since then I have been reminded by *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), that Judge Morgan and I are not that free to disregard that factual conclusion of the state court. That is, I agree, as it should be.

Now, in view of *Edwards*, I am compelled to concur in directing the writ to issue as I see nothing in the record to suggest that White "initiated" the contact with the officers which led to his confession, although there were other circumstances examined in our first opinion which suggested that there had been a waiver of the right to counsel if in fact counsel had been requested.

Nor am I ready to extend *Stone v. Powell* in this case. Therefore, I join in Judge Swygert's analysis of this case in its new configuration.

About 13 years have passed since the defendant was found guilty of murder in the state trial. It is regrettable that our judicial processes bring us to this conclusion at such a late date that the practical chances of a retrial are surely remote.

---

sideration. Also, in *Stone* itself Justice Powell shifted emphasis from the guilt/innocence rationale he expounded in *Schneckloth* to a utilitarian analysis. This may have been necessary to attract a majority of the Court. *See* Boyte, *Federal Habeas Corpus After Stone v. Powell: A Remedy Only for the Arguably Innocent?* 11

U.Rich.L.Rev. 291 (1977); Soloff, *Litigation and Relitigation: The Uncertain Status of Federal Habeas Corpus for State Prisoners*, 6 Hofstra L.Rev. 297 (1978).

**1.** *People v. White*, 61 Ill.2d 288, 335 N.E.2d 457 (1975).